Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

McGEE BROTHERS COMPANY, INC., Sam McGee, Bill McGee, Don McGee, Michael McGee, and Cletus Huntley, Defendants.

Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

WENDELL'S WOODWORK, INC., Wendell Long, Herbert Long, Defendants.

Nos. C-C-86-173-P, C-C-87-420-P.

United States District Court, W.D. North Carolina, Charlotte Division.

March 1, 1988.

As Amended March 11, 1988.

Patricia J. Craft, Bobbye D. Spears, Regional Sol., U.S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Sam McGee, McGee Bros. Co., Inc., pro se.

W. James Chandler, for defendants.

Thomas A. McNeely, Charlotte, N.C., for defendants in No. C–C–87–420–P.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER was tried to the Court on January 19, 20, 21, 22, and 23, 1988 at Charlotte, North Carolina. Plaintiff was represented by Patricia J. Craft and Robert L. Walter, Attorneys at Law. Defendants were represented by W. James Chandler, Jr. and Thomas A. McNeely, Attorneys at Law.

The matter was before the Court on Plaintiff's Complaint, as amended, asking for an injunction enjoining Defendants, their officers, agents, servants, employees, and all other persons in concert or participation with them in C–C–86–173–P, from violating the provisions of Sections 6, 7, 11(c), 12(c), 15(a)(2), 15(a)(4), and 15(a)(5) of the Act and restraining the withholding of payment of backwages found by the Court to be due employees under this Act, for a period of three years prior to the commencement of this action in accordance with Section 17 of the Act (29 U.S.C. § 217) plus interest at 12% per annum, and the costs of this action.

In File No. C–C–87–420–P, Plaintiff prayed for an injunction permanently enjoining Defendants, their officers, agents,

servants, employees, and all other persons in active concert or participation with them from violating the provisions of Sections 12 and 15(a)(1) of this Act, and on Plaintiff's petition for adjudication of civil contempt by Defendants of the Court's Preliminary Injunction filed October 5, 1987 and to enlarge the aforesaid injunction to include under its prohibitions and to further enjoin Defendants from violating Section 12(a) of the Act (29 U.S.C. § 212(a)) which prohibits the shipment or delivery for shipment in commerce of any goods produced in violation of Section 12(c) of the Act.

## FINDINGS OF FACT AS TO DEFENDANTS WENDELL'S WOODWORK, INC., WENDELL LONG, AND HERBERT LONG

(1) Wendell's Woodwork, Inc. (hereinafter "Wendell's") is a for profit North Carolina corporation, with its principal office in the Western District of North Carolina, Charlotte Division.

(2) Majority ownership and control of the corporation is vested in the respondents Wendell Long and his father W. Herbert Long.

(3) Herbert Long and Wendell Long as officers of the Company make decisions as to what work is to be performed by the employees of the Company, and otherwise oversee and control the daily operations of the Company.

(4) Since at least September 1984 and up until at least October 5, 1987 minors under the age of sixteen years and sixteen to eighteen years of age have worked for Defendants.

(5) Wendell's gross income since 1984 is approximately as follows:

| | |
|---|---|
| 1984 | — $300,000 |
| 1985 | — $400,000 |
| 1986 | — $640,000 |
| 1987 | — over $1,000,000 |

(6) Wendell's is engaged in manufacture of wood products such as industrial stakes used in the construction industry, repairs wood pallets, manufactures wedging material used by the mobile home industry and repairs and sells woodworking equipment, power saws, and tools.

(7) The respondents have shipped outside the State of North Carolina or delivered for shipment outside the State the products manufactured in their establishment on which the minors performed labor within 30 days of the removal of such products.

(8) Plaintiff's Exhibits 1–A through 1–I are "Vocational Training Agreements" involving minors from 11 to 16 years of age which purport to enroll the "child" as denominated in the agreement, in the Shiloh True Light Church of Christ (hereinafter "Church") Vocational Program wherein the Parent releases the Company from any damages resulting from injuries sustained by the child "... while in the aforementioned program or employment of Company ..." These agreements were executed by the Parent, the child, Wendell's and the Church in 1985 and 1986. These Agreements apparently are no longer in effect.

(9) From September of 1984 until October 5, 1987, minors under the age of 18 years have operated power driven woodworking machinery, power driven circular saws, hand saws and forklifts under the supervision of Wendell Long, at both the Happy Hollow and Blair Road facilities of Wendell's.

(10) Both Wendell Long and Herbert Long determined the hourly rate of pay and the bonus for both adult and minor employees of Wendell's from September 1984 until at least October 5, 1987.

(11) On October 5, 1987 this Court entered a Preliminary Injunction enjoining Wendell's, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from violating 29 U.S.C. § 212(c) and 29 U.S.C. § 215(a)(4) from employing, suffering or permitting minors to work in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the Act, under conditions constituting oppressive child labor as defined in 29 U.S.C. § 203(*l*) and the regulations thereunder.

Defendant Wendell and the individual Defendants were represented by counsel at the October 5, 1987 hearing on Plaintiff's Motion for a Preliminary Injunction.

(12) By a document dated October 10, 1987, (Plaintiff's Exhibit 11) Wendell's and the Church entered into a "Lease and Licensing Agreement" for certain equipment to the Church and for real property at 7721 Happy Hollow Road which is owned by William Herbert Long and Peggy Watson Long, at a rental of $1500.00 per month. The lease price was determined by Herbert Long and Wendell Long and presented to Brother Rommie Purser, Church Elder.

(13) After October 5, 1987, the individual Defendants continued to own and operate the corporate Defendant engaging in the woodworking industry, including the manufacturing of wood products and the repair and sale of woodworking equipment, power saws and tools.

(14) After August, 1986, the payroll for the minors was changed so that the "trainees" who worked on products manufactured by Wendell's received their wages from the Church.

(15) The Church invoiced Wendell's for the labor performed by the minors and for the materials furnished. (Plaintiff's Exhibit 12, pages 1–38). As Wendell Long testified in his deposition of October 27, 1987 Wendell's "... purchased labor from Shiloh Vocational ..." (Depo. p. 67).

(16) The individual Defendants understood the Order of this Court filed October 5, 1987.

(17) Two of the minors who worked on Wendell's products, Patrick Ferguson and Michael Smith are not members of the Church.

(18) The products worked on by the minors at Wendell's continued to be shipped out of North Carolina.

(19) Since October 5, 1987 the individual Defendant officers of Wendell's continued to possess and exercise independent authority to oversee and control the daily operations of the business including operational control of every aspect of the minors' work. The minors performed the same tasks and work as they did before October 5, 1987, i.e., repairing power driven equipment, manufacturing stakes, operating power driven equipment, and driving forklifts.

(20) After October 5, 1987, Herbert Long took the responsibility for assigning and directly supervising the manufacturing work of the minors on a daily basis and recording their hours worked and their production.

(21) After October 5, 1987, the workload of the minors continued to be determined by Wendell Long and Herbert Long according to the daily production needs of Wendell's.

(22) After October 5, 1987, Wendell's adult employees continued to be paid for the hours they spent supervising the minors.

(23) The minors work four hours a day, five days a week when school is in session and 8 hours a day five days a week when school is not in session, plus some overtime hours.

(24) Prior to and since October 5, 1987, production bonuses have been paid to minors based on a quota.

(25) Prior to October 5, 1987, the minors worked at Wendell's locations on Blair Road and Happy Hollow Road. After October 5, 1987, the minors worked only at the Happy Hollow Road location.

(26) All material which was processed by the minors came from Wendell's inventory, and was brought in by Wendell's truck. After the minors' "rough mill" work was completed at Happy Hollow, the processed goods were shipped by Wendell's truck to Blair Road for the ripping process and then back to Happy Hollow Road for pointing and packaging. The Church has no investment in the equipment used by the minors.

(27) Wendell's trucks are operated by both adult employees and by the minors.

(28) The common form of discipline of the minor "trainee" is to lay them off the job. This was done by officers of Wendell's.

(29) Wendell's benefited from the minors' work.

(30) The price for the labor on Wendell's products by the "trainees" was determined by Defendants Herbert Long and Wendell Long based on what Wendell's could afford to pay the Church Vocational Program for work done by the minors for Wendell's.

(31) Work was not subcontracted to the Church before October 5, 1987, but the same work was subcontracted to the Church after October 5, 1987.

(32) Janice Long did the payroll accounting for Wendell's on a computer located at Wendell's. She calculated the bonuses for employees on a form prepared by Wendell Long. The form includes the total production of products for the month at Wendell's from which she derives the individual employee's bonuses.

(33) Production bonuses for minor employees are calculated on the same basis as for adult employees.

(34) Since October 5, 1987, production bonuses have primarily been determined by Janice Long, but she consulted with Wendell Long in determining bonuses which since October 5, 1987 have been based on the same quota. Wendell Long prepared a form for figuring bonuses before October 5, 1987.

(35) Plaintiff's Exhibit 18–B lists 12 businesses that have provided instruction and employment for students of the Shiloh Vocational Training Program beginning in August of 1986.

(36) Each business working with the Church Vocational Program is assigned a department number. For example, McGee Brothers is Department No. 5 and Wendell's is Department No. 10 in the Shiloh Vocational Training Program.

(37) Plaintiff's Exhibit 12, pages 1–40 are invoices from Shiloh Vocational Training Program to Wendell's from October 5, 1987 to December 24, 1987. These invoices were prepared at Wendell's office.

## CONCLUSIONS OF LAW AS TO WENDELL'S

(1) Respondents, Wendell's Woodwork, Inc., Wendell Long, and Herbert Long, had full and complete knowledge of the Preliminary Injunction entered by this Court on October 5, 1987.

(2) Since October 5, 1987, respondents, Wendell's Woodwork, Inc., Wendell Long, and Herbert Long, have continued to employ the subject minors to work in an enterprise engaged in commerce or the production of goods for commerce within the meaning of §§ 3(r) and (s)(1) of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 203(r) and (s)(1)], hereinafter the Act or FLSA.

(3) Since October 5, 1987, Defendants have willfully continued to violate the provisions of § 12(c) of the Act [29 U.S.C. §§ 212(c) and 215(a)(4)] and Child Labor Regulation 3 which prohibit the employment of oppressive child labor in unpermitted occupations.

(4) Since October 5, 1987, Defendants have willfully continued to violate the provisions of § 12(c) of the Act [29 U.S.C. §§ 212(c) and 215(a)(4)] and Regulations 29 C.F.R. §§ 570.55 and .65—Hazardous Orders Nos. 5 and 14 which prohibit the employment of oppressive child labor in occupations which have been declared by the Secretary of Labor to be particularly hazardous.

(5) Since October 5, 1987, Defendants have willfully continued to violate the provisions of § 12(a) of the Act [29 U.S.C. §§ 212(a) and 215(a)(4)] which prohibits the shipment or delivery for shipment in commerce any goods which were produced by oppressive child labor.

(6) Each Defendant is hereby adjudged to be in civil contempt of the Preliminary Injunction entered by this Court.

(7) In view of the continued contempt of this Court's Injunction by Defendants, the magnitude of the harm threatened by the continued contumacy, and the amount of each one's financial resources, the following compliance fines for each day they remain in contempt are warranted:

| | |
|---|---|
| Wendell's Woodwork, Inc. | $5,000 per day |
| Wendell Long | $500 per day |
| Herbert Long | $500 per day |

(8) Plaintiff is entitled to reimbursement by Defendants in amounts sufficient to compensate her for all expenses incurred in the investigation and prosecution of this contempt proceeding, and shall submit a timely itemization of such expenses.

(9) Any Finding of Fact which may be deemed a Conclusion of Law is so deemed and any Conclusion of Law which may be deemed a Finding of Fact is so deemed.

(10) Costs of this action will be taxed against Defendants.

## FINDINGS OF FACT AS TO McGEE BROTHERS CONSTRUCTION CO., INC., AND SAM McGEE, BILL McGEE, DON McGEE, MICHAEL McGEE, AND CLETUS HUNTLEY

(1) Defendant McGee Brothers Co., Inc. (hereinafter "McGee") is a for profit corporation equally owned by five shareholders: Cletus Huntley, Bill McGee, Mike McGee, Sam McGee, and Don McGee. Sam McGee is the President and all the others named hold the other offices in the Company. Decisions are made by majority vote of the shareholders. Each officer has decision-making authority and can obligate company. McGee's principal office is in the Western District of North Carolina, Charlotte Division.

(2) McGee's gross income has increased each year since 1983 as follows:

| | | |
|---|---|---|
| 1983 | — | approximately $7 million |
| 1984 | — | $ 8 million |
| 1985 | — | $10 million |
| 1986 | — | $12 million |
| 1987 | — | $14.5 million |

(3) An average of 180–200 employees are employed by McGee each week. Since at least April 7, 1983, minors worked on all the projects which produced that income. Most masonry contractors employ less than eight persons. Plaintiff's investigation from May 6, 1985 to October 29, 1985, revealed that for the period of June 23, 1983 to June 26, 1985 Defendant McGee employed 31 minors under the age of 16 as brick layers, laborers and in other related construction occupations at hourly rates ranging from $.50 to $3.25 or at daily rates of $10.00 for an average 8 hour day.

Thirty-three minors under the age of 18 years were employed to operate forklifts and front-end loaders to move pallets of bricks and other materials on construction sites. Twenty-two of these children were under the age of 14 years of age, with 2 as young as 8 years of age. Thirty-four minors were employed for more than three hours on a school day; more than 8 hours on a non-school day; or more than 40 hours in a non-school week.

McGee failed to pay both adult and minor employees at rates of at least one and one half times their regular rates of pay for hours over 40 in a workweek. For the period of June 23, 1983 to June 26, 1985, $7,862.08 in unpaid minimum wages was computed to be due 17 minor employees.

(4) McGee does masonry work for a number of general contractors, primarily home builders in the area around Charlotte, North Carolina.

(5) All of the shareholders, except Bill McGee, are members of Shiloh True Light Church of Christ (hereinafter "Church"), which was founded in the late 1800's.

(6) McGee contends that the Shiloh Vocational Training Program (hereinafter "S.V. P.") is a vocational training program conducted for the Church before August of 1986 by Defendant McGee among other companies, and that the minors who worked on McGee's projects were trainees who before August of 1986 received their training by working directly on company projects under the supervision of company officers and employees, and were paid directly by McGee.

(7) After August of 1986 and until October 5, 1987, the minors continued to work on McGee projects. However, they were paid by S.V.P. which in turn would invoice McGee, and McGee issued funds on a weekly basis to the vocational payroll account equal to the amount of wages plus the employer contribution to Social Security and withholding taxes for the trainees.

(8) At least since 1983 minors, *i.e.*, children under 18 years of age, have worked

on Defendant McGee's projects, doing masonry work, and related construction activity, including the operation of forklifts, some when nine years old, and continued to perform the same duties after October 5, 1987.

Some of the minors who worked at McGee construction sites were as young as nine years old and weighed as little as 80 pounds. Their work included but was not limited to:

(a) operating a forklift after receiving no instruction except watching someone else and with no adult present;

(b) carrying mortar bags weighing up to 94 pounds;

(c) loading brick on a forklift and riding the forklift up to scaffold and placing brick on scaffolding up to 28 feet high;

(d) climbing on roof of residences to carry brick for chimney;

(e) working from 7:00 a.m. until 5:00 p.m. and sometimes later during summer, as well as a one-half day on Saturday;

(f) laying brick; and

(g) the minors would work with other adult construction workers in other trades such as electrical, plumbing, and framers.

(9) There have been injuries to minors resulting from scaffolding turning over with minors on it, falling brick, mortar splashing in eyes, etc.

(10) On October 5, 1987, this Court issued a Preliminary Injunction ordering that "... the defendant, its officers, agents, servants, employees, attorneys and all persons in active concert or participation with them are preliminarily enjoined during the pendency of this action, from violating the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*), hereinafter referred to as the Act in any of the following manner:

They shall not, contrary to §§ 12(c) and 15(a)(4) of the Act [29 U.S.C. §§ 212(c) and 215(a)(4)], employ, suffer or permit minors to work in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, under conditions constituting oppressive child labor as defined in § 3(*l*) of the Act [29 U.S.C. § 203(*l*)] and Regulations 29 C.F.R. § 570 thereunder. Particularly, they shall not,

a. contrary to regulations at 29 C.F.R. § 570.35, employ minors under the age of 16 years for more hours than permitted and/or during hours not permitted thereby;

b. contrary to regulations at 29 C.F.R. § 570.33 and/or .34, employ minors under the age of 16 years in occupations not permitted thereby; and

c. contrary to regulations at 29 C.F.R. § 570.58, employ minors under the age of 18 years in occupations declared herein to be particularly hazardous."

(11) The Shiloh Vocational Program took over the payroll for trainees and accepted money for the work performed after October 5, 1987. After October 5, 1987, the minors who were doing masonry construction work at McGee construction sites have continued to perform masonry construction work in the same job classifications, subject to the general supervision and control of McGee's officers.

(12) By a document dated October 5, 1987, though signed a few days later, McGee leased to the Shiloh Vocational Training Program Four Rough Terrain Lift Trucks, for a monthly rental of $1,700 per truck, 4–2 bag mortar mixer at a monthly rental of $300 per mixer, 4 water tanks on wheels at $100 per tank and 4 trailers with scaffolding at $200 per trailer, for a total of $9,200 per month including maintenance to be paid by the Church to McGee. This was done at the suggestion of legal counsel in an effort to make the program acceptable to the Labor Department.

(13) The Church has no investment in any equipment necessary to perform the work the minors are doing. After October 5, 1987, the minors have continued to be paid at the same respective rates of pay, work the same regular daily number of hours and be directed by the same officers

and employees of McGee, who also exercised authority over the minors in matters of discipline in conjunction with the Church elder, Rommie Purser.

(14) After October 5, 1987, the minors continued to work with the same construction equipment, and use identical types of construction materials, all of which have been and are owned by McGee. The invoices to the customer for work done by the trainees on the Shiloh Vocational Program were prepared by McGee.

(15) After October 5, 1987, the materials continued to be dispatched by Cletus B. Huntley to the job sites where the minors were working in corporate owned vehicles operated by adult McGee employees. After October 5, 1987, if McGee could not get to work requested by a customer, it would be referred to the S.V.P. to perform which was beneficial to McGee. If the S.V.P. trainees were not available, McGee would be required to hire additional employees in order to maintain the same level of business.

(16) After October 5, 1987, McGee continued to transfer the construction equipment used by the minors from one job site to another.

(17) The minors are transported in trucks which were donated by McGee. The minors paid a fee to McGee's driver to ride in the truck every day to the job site and back. "He takes his own money and pays the driver of the truck."

(18) McGee trucks, including those donated to the Church, are equipped with radio telecommunications to provide ready access by minors to corporate officers and other supervisory employees for materials, assistance, and supervision on job sites.

(19) Since at least 1983 (See Schedule "B" Attached) minors under the age of 18 have regularly worked at Defendant's job sites. On those construction job sites minors performed all phases of the masonry job, i.e., carried mortar, mixed mortar, carried brick, laid brick, operated forklifts, and in general did all aspects of the job on those sites. For example, Travis McGee who was twelve years old at the time of trial testified that he first laid brick when he was 9 years old, and first drove a forklift when he was 9 years old. Travis McGee further testified that he often drove a forklift before August of 1986 and that after October 5, 1987, he has driven a forklift and laid brick. He further testified that he worked 40 hours a week in summer and 20–25 hours a week during the school year. He now earns $7.75 an hour and can lay 1,000 bricks a day.

(20) Many other minors under 18 years of age have operated a forklift since October 5, 1987; among them being Randall York, Anthony York, Dalton Reynolds, Darren Purser. Since October 5, 1987, eight to ten year old minors were working very similar to the way they had been earlier.

(21) The masonry construction work performed by minors since October 5, 1987, the same as before that date, often is under the sole supervision of "trainee foreman", with no adult present on the job site.

(22) The "trainee foreman" at a McGee job site functions as McGee's on-site representative to the prime contractor.

(23) McGee continues to pay wages to adult employees who have general supervision of minors.

(24) The construction jobs on which the subject minors have been employed since October 5, 1987 have been "traded" for and controlled by officers of McGee, and have worked on job sites that were subcontracted from general contractors by McGee.

(25) Since October 5, 1987, McGee's officers have handled customer contact, negotiated the price for the labor and material, determined and dispatched materials necessary for the job, scheduled the work, and exercised general on-site supervision of the minor's work, including determining on a daily basis the work minors would perform, and making certain the job was done correctly.

The elder of the Church, Rommie Purser, who was in charge of the S.V.P., knows very little about masonry work and relies heavily on McGee concerning the masonry trainees.

(26) By the time a trainee has graduated from the program they are accomplished brick masons with several years' experience and for that reason, it has been a policy of McGee to hire graduates of the Shiloh Vocational Program who are masonry trainees. A graduate trainee, once they work for McGee, has a job with McGee and Don McGee testified in his deposition, page 28, line 21, he did not know of any trainee who graduated from the Program who had not been hired by McGee.

(27) After October 5, 1987, McGee sold materials to Shiloh Vocational Program at a profit. Rommie Purser dealt with McGee in the purchase of these materials.

(28) Defendants have failed to pay some employees the applicable minimum hourly rate of $3.35 for all hours worked, since April 7, 1983.

(29) In some instances Defendants' records only reflect daily wage rates with no corresponding hours worked.

Defendants have failed to make, keep, and preserve accurate records of all hours worked by each employee, since 1983, and apparently are not keeping any since the start of the lawsuit in an attempt to obscure the employment issue as to minors.

(30) Defendant advised its employees on hiring that they would be paid monthly incentive-type bonuses based on the employee's production.

(31) Defendants have failed to pay both adult and minor employees at rates at least one and one half times their regular rate of pay for hours over 40 hours in a work week. Defendant has failed to include monthly production bonuses in the employee's regular rate for purposes of calculating overtime pay. Defendant retained no discretion to deny payment of a bonus under its understanding with its employees.

(32) The employees of Defendant McGee are due $98,225.07 in unpaid minimum wages and overtime compensation for the periods shown in Schedule "A" attached to Judgment.

(33) Defendant Sam McGee's testimony at his deposition and at trial was evasive to the point that it made a mockery of the judicial process of attempting to learn the facts in this case. It was only through the persistent and probing questions of Plaintiff's attorney that a semblance of the true facts was finally brought out so that findings of fact could be made by the Court. A reading of his deposition and his trial testimony will demonstrate his continued contumacious resistance to having the truth finally to evolve from these proceedings.

### CONCLUSIONS OF LAW AS TO McGEE

The pertinent parts of the FLSA in this case are as follows:

*Statutory and Regulatory Provisions Involved*

*Section 3* of the FLSA [29 U.S.C. § 203], provides in relevant part:

§ 203. *Definitions*

As used in this chapter—

\* \* \* \* \* \*

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee \* \*

(e)(1) \* \* \* the term "employee" means any individual employed by an employer.

\* \* \* \* \* \*

(g) "Employ" includes to suffer or permit to work.

(1) "Oppressive child labor" means a condition of employment under which (1) *any employee under the age of sixteen years is employed by an employer* (other than a parent or a person standing in place of parent employing his own child or a child in his custody under the age of sixteen years in an occupation other than manufacturing or mining or an occupation found by the Secretary of Labor to be particularly hazardous for the employment of children between the ages of sixteen and eighteen years or detrimental to their health or well-being) *in any occupation,* or (2) *any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages*

or detrimental to their health or well-being (emphasis supplied);

\* \* \* \* \* \*

*Section 6(a)* [29 U.S.C. § 206(a)] provides in pertinent part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for, wages at the following rates:

\* \* \* \* \* \*

(1) ... not less than $3.35 an hour after December 31, 1980....

*Section 7* [29 U.S.C. § 207] provides in pertinent part:

(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

\* \* \* \* \* \*

(e) As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employer, but shall not be deemed to include—

\* \* \* \* \* \*

(3) Sums paid in recognition of services performed during a given period if ... (a) both the fact that the payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to effect such payments regularly;

\* \* \* \* \* \*

*Section 11(c)* [29 U.S.C. § 211(c)] provides:

Every employer subject to any provision of this Act or of any order issued under this Act shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Secretary as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act or the regulations or orders thereunder.

\* \* \* \* \* \*

*Section 12(c)* [29 U.S.C. § 212(c)] provides:

No employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce.

*Section 15(a)(2)* [29 U.S.C. § 215(a)(2)] provides in pertinent part:

[I]t shall be unlawful for any person ... to violate any of the provisions of section 6 or section 7....

*Section 15(a)(4)* [29 U.S.C. § 215(a)(4)] provides that:

[I]t shall be unlawful for any person ... to violate any of the provisions of section 12.

*Section 15(a)(5)* [29 U.S.C. § 215(a)(5)] provides in pertinent part:

[I]t shall be unlawful for any person ... to violate any of the provisions of section 11(c)....

*Section 17* [29 U.S.C. § 217] Injunction Proceedings:

[t]he district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 15....

29 C.F.R., Part 570, Subpart E declares:

"Occupations Particularly Hazardous for the Employment of Minors Between 16 and 18 years of Age or Detrimental to Their Health or Well–Being"

\* \* \* \* \* \*

§ 570.58 "Occupations involved in the operation of power-driven hoisting apparatus (Order 7)" states in pertinent part:

(a) Finding and declaration of fact. The following occupations involved in the opera-

tion of power-driven hoisting apparatus are particularly hazardous for minors between 16 and 18 years of age:

(1) Work operating an elevator, crane, derrick, hoist, or *high-lift truck* ... (emphasis supplied).

(b) Definitions. As used in this section:

\* \* \* \* \* \*

(5) The term "high-lift truck" shall mean a power-driven industrial type of truck used for lateral transportation that is equipped with a power-operated lifting device usually in the form of a fork or platform capable of tiering loaded pallets or skids one above the other. Instead of a fork or platform, the lifting device may consist of a ram, scoop, shovel, crane, revolving fork, or other attachments for handling specific loads. The term shall mean and include high-lift trucks known under such names as *fork lifts, fork trucks, forklift trucks,* tiering trucks, or stacking trucks, but shall not mean low-lift trucks or low-lift platform trucks that are designed for the transportation of but not the tiering of material (emphasis supplied).

\* \* \* \* \* \*

29 C.F.R. § 778.209(a) provides in pertinent part:

Method of inclusion of bonus in regular rate.

Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hours rate of pay and overtime compensation.... Under many bonus plans, however, calculations of the bonus may necessarily be deferred over a period of time longer than a workweek.... When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

29 C.F.R. § 778.211(c) provides:

Discretionary Bonuses.

Promised bonuses not excluded. The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring ... would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

Jurisdiction of the parties and the subject matter is conferred upon the Court by § 17 of the FLSA (29 U.S.C. § 217), and venue properly lies in this Court.

Defendants' masonry construction firm constitutes an enterprise engaged in commerce or in the production of goods for commerce within the meaning of §§ 3(r) and 3(s)(4) of the Act (29 U.S.C. §§ 203(r) and 203(s)(4).

## I. THE MINORS WORKING FOR DEFENDANTS ARE EMPLOYEES UNDER THE ACT

The principal issue in this case is whether the minors under 18 years of age were at all times from 1983 to the time of trial employees of Defendants. If the minors are "employees" then there is little dispute as to the other issues.

As to the individual Defendants, under the facts of the case, they, as owners and officers of Defendant corporations who make decisions as to what work is to be performed by employees of the Company, act directly in the interest of the employer, and the individual Defendants are therefore clearly within the definition of "employer."

The definition in the statute of an "employee" is any individual employed by an employer. The term "employ" is defined in the statute as including "to suffer or permit to work." The minors in this case were individuals who were suffered or permitted to work on company projects by Defendants both before and after October 5, 1987, and therefore come within the definition of "employee."

Before August of 1986 the minors were working for Defendants on company projects, under supervision of Defendant corporations' officers, and paid directly by Defendant corporation, thus meeting the dictionary definition of an "employee" as a person employed by another for wage or salary.

After August of 1986, the accounting for wages was changed and the minors worked at the same corporate projects but were paid by Shiloh Vocational Training Program, which then billed Defendant corporation for their labor.

In short, Defendants purchased labor from Shiloh Vocational. It was the same dog as before, but a different name from August 1986 to October 5, 1987.

After October 5, 1987, the minors working on McGee construction sites were on the Church Vocational Program payroll which billed the customer directly on invoices prepared by McGee.

The McGee Defendants have thus attempted through two different labels to accomplish the same goal—the employment of minors in their businesses. The McGee Defendants, until August 1986, openly employed minors under conditions within the Act's definition of "oppressive child labor," and in occupations which the Secretary of Labor has found and by order declared to be particularly hazardous, and at the same time paid some of these children below the prescribed minimum wage, while its gross income more than doubled from $7 million in 1983 to $14.5 million in 1987. Defendant then attempted to hide behind the label of a "Vocational Program of the Shiloh True Light Church of Christ."

In August of 1986, Defendant McGee developed the paper sham of putting the children on the payroll of the Shiloh Vocational Program and paying the program for its child labor, rather than paying the children directly. Now, after October 5, 1987, the same children, are doing the same labor with the same tools and the same equipment on the same or similar construction sites, operating the same forklifts under the sole supervision of trainee foremen in some instances with no adult present on the job site, doing work "traded for" and generally supervised and controlled by officers of McGee who negotiate the price for their labor, determine and dispatch materials necessary for the job, schedule the work, exercise on-site supervision of the minors' work, and for a fee, transport the children to the job site. The only difference since October 5, 1987 is that the children are paid their wages by the Shiloh Vocational Program which invoices the customer on invoices prepared by McGee.

The courts have generally concluded that in determining who are "employees" under the Act, common law employee categories or employer—employee classifications under other statutes are not of controlling significance since this Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which prior to this Act were not deemed to fall within the employer-employee category. *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748 (9th Cir.1979).

> The terms ... "employee" and "employer" are not to be construed in their common law senses when used in federal social welfare legislation (citing cases). Rather, their meaning is to be determined in light of the purposes of the legislation in which they are used ...

*Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 299 (5th Cir.1975).

One of the early cases in the Fourth Circuit was *Southern Ry. Co. v. Black*, 127 F.2d 280 (1942) in which the court decided that the red caps who worked at Southern Passenger Stations were employees of the railroad under the FLSA even though they were not compensated by the railroad.

Chief Judge Parker writing for the court at page 281 said:

> We agree with the Court below that on the undisputed facts the plaintiffs were employees of defendants within the meaning of the Fair Labor Standards Act, which defines "employ" as including "suffer or permit to work." Sec. 3(g), 29 U.S.C.A. Sec. 203(g). Services rendered by porters or red caps are absolutely necessary to the proper operation of the railway station such as that at Raleigh, N.C. and such persons are properly considered employees of the company on whose premises they work and to whose general supervision and direction they are subject, even though their compensation is derived from gratuities or tips received from persons to whom they render assistance. The determinative factor is not the source of their compensation, but the fact that they render services which are necessary to the proper running of the defendant's station, that they are hired or selected by defendants and permitted by them to render these services, that they are subject to the general supervision and control of defendants in rendering the services and that the defendants have the power to discharge them.

Another of the earlier cases in the Fourth Circuit is *McComb v. Homeworkers' Handicraft Cooperative*, 176 F.2d 633 (1949). In an opinion by Chief Judge Parker, the court stated on page 636:

> Whether or not the homeworkers are employees within the meaning of the Fair Labor Standards Act, however is to be determined, not by the common law concepts, but by a consideration of the purpose which Congress had in mind in the passage of the Act, which defines "employ" as including "to suffer or permit to work."

It is well established that the issue of whether an employment relationship exists under the FLSA must be judged by the "economic realties" of the individual case. *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979). That the appellants may not have had the intention to create an employ-ment relationship is irrelevant; "it is sufficient that one person suffer or permit another to work." *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir.1974). *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470–71 (11th Cir.1982).

In *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed.2d 1947 (1947) the court held that "in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service."

> ... Five considerations have been set out as aids to making determination of dependence, *vel non*. They are: degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required.

No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor-economic dependence. See *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir.1975). The five tests are tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is *dependence* that indicates employee status. Each test must be applied with the ultimate notion in mind. More importantly, the final and determinative question must be whether the total of testing establishes the personnel are so dependent upon the business with which they are connected, that they come within the protection of the FLSA or are sufficiently independent to be outside its ambit. *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1311, 1312 (5th Cir.1976).

Clearly in the case before the Court the children are completely dependent on McGee for their employment. Obviously, neither Rommie Purser nor the Church was qualified to negotiate or price the work the minors were to perform, could not provide the "know how", or schedule the work of the minors, had no investment in equipment nor the knowledge of how to operate it, could not provide permanency of employ-

ment and the skill to maintain the enterprise of brick masonry provided by Defendant McGee, which was qualified to and did perform all those functions.

Further, Defendant McGee is clearly an "enterprise" within the meaning of the statute engaged in the business of construction. 29 U.S.C. § 203(r), (s)(4).

Simply because McGee has attempted to label the minors "trainees" and the Shiloh Vocational Training Program has paid their wages since October 5, 1987, when the totality of the circumstances is considered, does not give credence to Defendant McGee's contention that the words they use in designating these minors as "trainees" employed by Shiloh Vocational Training Program are what Defendant McGee choose those words to mean.

The minors are clearly dependent on Defendants' business for their employment and are the class of person whom the Act is designed to protect. They are children doing adults' work, and regardless of the label Defendants have attached to them, i.e., "trainees in Shiloh Vocational Training Program," they are manifestly being exploited by Defendants in this case whether or not they proclaim their purpose to be in furtherance of their religious beliefs.

The shenanigans Defendants have engaged in throughout this action with the help of their attorneys is a shameless effort to continue their exploitation of children in a commercial enterprise despite the laws of this country, which have been well settled for decades, that oppressive child labor is not to be tolerated.

If Defendants were allowed to prevail in their efforts to evade their statutory obligations not to employ oppressive child labor it would invite further mischievous schemes by other employers to avoid the burdens of a civilized society.

## II. THE INDIVIDUAL DEFENDANTS, OWNERS, AND OFFICERS OF DEFENDANT

As to the individual Defendants, Samuel A. McGee, Donald R. McGee, Michael R. McGee, R. Bill McGee, and Cletus B. Huntley, their position as officers of McGee, who have participated in the supervision and control of the activities of the minors clearly brings them within the meaning of the term "employer" in relation to the minors as defined in the Act. 29 U.S.C. § 203(d). *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973). They had operational control of the corporation's covered enterprise and acted directly in the interest of McGee in relation to their employees.

## III. DEFENDANTS HAVE VIOLATED THE MINIMUM WAGE PROVISION OF THE ACT

Defendant McGee has offered no defense to the Plaintiff's complaint as to their failure to pay employees at the applicable minimum hourly rate for all hours worked, since April 7, 1983.

*Because Defendants Have Kept Inadequate Records, the Computation of the Unpaid Minimum Wages May be Based on Sufficient Evidence to Show the Extent of the Uncompensated Hours Worked as a Matter of Just and Reasonable Inference.*

Defendant McGee not having kept adequate records, computation of the amount of unpaid minimum wages may be based on sufficient evidence to show the extent of the uncompensated hours worked as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1945); *LeCompte Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir.1986). Once the plaintiff produces such evidence the burden shifts to the employer to come forward with evidence of the precise amount of work performed or to prove that plaintiff's evidence is unreasonable, and if he cannot, plaintiff may be awarded back wages, even though the amount of such an award may be only approximately. *Mt. Clemens Pottery, supra*, 328 U.S. at 687–688, 66 S.Ct. at 1192–93. It is clear that each employee need not testify in order to make out a *prima facie* case of the number of hours worked as a matter of just and

reasonable inference. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir.1985). Defendant McGee has offered no evidence to contest the *prima facie* case made by Plaintiff as to the computation of the amount of unpaid minimum wages.

## IV. SINCE APRIL 7, 1983 DEFENDANTS HAVE VIOLATED THE OVERTIME PROVISIONS OF THE ACT BY FAILING TO INCLUDE MONTHLY PRODUCTION BONUSES IN EMPLOYEES' REGULAR RATE

■ Defendant McGee stipulated that it failed to include the monthly production bonuses in Employees' Regular Rate. That is a violation of the overtime provision of the Act.

The FLSA defines the "regular rate" to include "all remuneration for employment paid" to employees (29 U.S.C. § 207(e)), and is generally calculated by dividing the total compensation paid for each workweek by the number of hours actually worked that week. *Overnight Motor Transportation Co., Inc. v. Missel*, 316 U.S. 572, 580, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682 (1942).

### A. *Further, Defendant's Failure to Plead Affirmatively That the Production Bonus is Excludable From the Regular Rate Constitutes a Waiver of Such Defense.*

■ In the absence of specific exclusions as set out in 29 U.S.C. § 207(e), all remuneration paid in the workweek must be included in the calculation of the regular rate. *Overnight Motor Transportation Co., Inc., supra,* at 580, 62 S.Ct. at 1221; 29 C.F.R. 778.108–109. And, bonuses are excludable only if the employer can affirmatively show that they fit one of the specific statutory exclusions and that each condition specified therein is met. *Brock v. Two R Drilling Co., Inc.,* 789 F.2d 1177, 1179 (5th Cir.1986). As the Fourth Circuit recently stated:

... the general rule is that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof ...

*Clark v. J.M. Benson Co., Inc.,* 789 F.2d 282, 286 (4th Cir.1986), citing cases.

Defendant McGee failed to plead and prove affirmative defense that the monthly production bonus is excludable from the regular rate pursuant to a specific statutory exception and therefore the defense is waived.

### B. *Defendants' Monthly Production Bonus is Not Excludable From the Regular Rate Pursuant to Section 7(e)(3) of the Act.*

■ Section 7(e)(3) [29 U.S.C. § 207(e)(3)] provides a statutory exclusion from the regular rate for discretionary bonuses. The relevant part of § 7(e)(3) provides that in order to be excludable from the regular rate, both the decision to make the payment and the determination of the amount of the payment must be made "at the discretion of the employer," and "at or near the end of the period." Furthermore, the payment must not be pursuant to any "prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 C.F.R. § 778.211; *Haber v. The Americana Corp.,* 378 F.2d 854, 856 (9th Cir.1966), *cert. denied,* 389 U.S. 914, 88 S.Ct. 242, 19 L.Ed.2d 262 (1967). In other words, in order for a payment to be excludable pursuant to § 7(e)(3), each of four independent requirements must be met:

The employer must retain discretion as to whether the payment will be made;

The employer must retain discretion as to the amount;

The employer must retain discretion as to the payment of the bonus until near the end of the period which it covers; and

The bonus must not be paid pursuant to any prior contract, agreement, or promise.

It is clear in this case that incentive-type bonuses were given pursuant to an agreement or understanding as a reward for specific employee behavior and therefore must be included in the regular rate. *Jack-*

*sonville Paper Co. v. McComb,* 167 F.2d 448 (5th Cir.1948), *rev'd* on other grounds, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). Any bonus which, as here, employees are apprised of upon hiring cannot be excluded. 29 C.F.R. § 778.211(c); *Walling v. Garlock Packing Co.,* 159 F.2d 44 (2d Cir.1947), *cert. denied,* 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837 (1947). It follows that in determining the regular rate of pay, a bonus which in fact constitutes part of an employee's compensation, rather than a true gratuity, must be included, even if such bonuses are not determined or paid until some time after the regular payday. *Walling v. Harnischfeger Corp.,* 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945); *Haber v. American Corp., supra,* 378 F.2d 854. The Supreme Court holds that among the groups of nonexcludable bonuses are those which, as here, are announced to employees to induce them to work more steadily, more rapidly, more efficiently, or to remain with the business. *Walling v. Harnischfeger Corp., supra,* 325 U.S. 427, 65 S.Ct. 1246; *Walling v. Younger–Reynolds Co.,* 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945).

Here, Defendants have admitted that payment of monthly bonuses was an established practice based upon fixed percentages of crew production and other enumerated conditions and that once an employee met the conditions, Defendants retained no discretion to deny payment of the bonus or to change the amount to be paid.

## V. SINCE APRIL 7, 1983, DEFENDANTS HAVE VIOLATED THE RECORDKEEPING PROVISIONS OF THE ACT

Every employer is required to make, keep and preserve adequate and accurate records of, *inter alia,* the name, hours worked each day and total hours worked each workweek of every employee subject to the Act. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. An employer's responsibility for complying with this requirement may not be evaded by delegation of the recordkeeping function to others. *Castillo v. Givens,* 704 F.2d 181, 194 (5th Cir.1983).

The recordkeeping requirements are fundamental underpinnings of the Act, for only by relying on employers' records can the Secretary of Labor with his limited facilities hope to be able to [fully] enforce the substantive provisions. Failure to keep accurate records can obscure a multitude of minimum wage and overtime violations. *Wirtz v. Mississippi Publishers Corporation,* 364 F.2d 603, 607 (5th Cir.1966).

Defendants' records will show that in some instances no hours worked by minors paid on the basis of a daily rate were maintained as required. *See Wirtz v. Fortuna Broom Company, Inc.,* 53 (CCH) Lab.Cas. ¶ 31,785 (S.D.Tex.1966) (employer's failure to keep records of hours worked by children). What's worse, in a transparent attempt to obscure the employment issue, defendants assert that since the institution of this lawsuit they are no longer making, keeping or preserving any of the statutorily required records as to the subject children.

## VI. SINCE APRIL 7, 1983, DEFENDANTS HAVE VIOLATED THE ACT'S PROHIBITION AGAINST EMPLOYMENT OF OPPRESSIVE CHILD LABOR

### A. *Defendants Have Employed Underage Minors in Occupations Not Permitted.*

Since its enactment in 1938, the FLSA child labor provisions have been designed to control or regulate the permitted employment of minors, as well as to abolish unpermitted employment outright. *Shultz v. Brennon,* 62 (CCH) Lab.Cas. ¶ 32,325. Responsibility for enforcement of the child labor provisions of the Act has been placed on Federal District Courts, which are charged with a "not to be treated lightly" duty to enforce the national policy of protecting the interest and welfare of the children of this country. *Goldberg v. Fritschy,* 198 F.Supp. 743, 747 (W.D.N.C. 1961), rev'd on other grounds, *sub. nom., Wirtz v. DuMont,* 309 F.2d 152 (4th Cir. 1962); *Lenroot v. Kemp,* 153 F.2d 153 (5th Cir.1946).

 The Supreme Court has long held that the child labor provisions, which forbid, *inter alia,* any employer from employing any oppressive child labor in any enterprise engaged in commerce or in the production of goods for commerce, apply regardless of whether the children are paid above the minimum wage rate. *See, Gemsco, Inc. v. Walling,* 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945); 29 U.S.C. § 203(*l*). "[T]he child labor provisions are themselves independent prohibitions, not limited to operation in situations where child labor has harmful effects on maintaining the minimum wage rate but working entirely independently of such consequences." *Gemsco v. Walling, id.,* 324 U.S. at 261–62, 65 S.Ct. at 615. Defendants' contention that payment of remuneration (now dubbed "stipends" by the Defendants) to the subject children in some instances above the minimum wage rate, and their boastful references to the sums of money accruing to the children at age 18, as a result of their many years of child labor, constitutes a defense to the oppressiveness of their labor is thus untenable. Similarly, Defendants' contention that they derive no special profit or advantage from the child labor has long been dismissed as an insufficient defense to an oppressive child labor violation. *Lenroot v. Interstate Bakeries Corp.,* 146 F.2d 325 (8th Cir. 1945).

 "Oppressive child labor" under the Act means a condition of employment under which (1) an employee under the age of 16 years is employed in any occupation or (2) an employee between the ages of 16 and 18 years is employed in any occupation which the Secretary of Labor by order declares to be particularly hazardous for the employment of children between such ages or detrimental to their health or well being. 29 U.S.C. § 203(*l*). Moreover, with certain exceptions not applicable here, the employment of minors under age 14 in any occupation has been statutorily prohibited since its enactment in 1938 and employment of minors under age 16 years in construction has been prohibited since 1950. 81 Cong. Rec. 7931 (1937); 3 Fed.Reg. 2532; 15 Fed. Reg. 395; 29 C.F.R. §§ 570.2, .33(f)(4)

and .119. The physical and psychological dangers to working children have always been of utmost Congressional and administrative concern. It is noteworthy that even if the subject minors were working in permitted occupations they have regularly worked hours far in excess of those permitted. 29 C.F.R. §§ 570.31–38.

Courts have thus consistently held since the enactment of the Act that the employment of minors under age 16 years in various unpermitted occupations constitutes "oppressive child labor." *See, e.g., Western Union Tel. Co. v. Lenroot,* 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414 (1945) (messengers); *Durkin v. Caroline Packing Corp.,* 23 (CCH) Lab.Cas. ¶ 67,438 (D.C.Va. 1953) (manufacturing).

B. *Defendants have Employed Underage Minors in Occupations Which Have Been Declared to be "Particularly Hazardous."*

To protect young workers from hazardous employment, the Act provides for a minimum age of 18 years in occupations found and declared by the Secretary to be particularly hazardous or detrimental to the health or well-being of minors 16 and 17 years of age. Hazardous occupation orders are issued after public hearing and advice from committees composed of representatives of employers and employees of the industry and the public and in accordance with published regulatory procedure. 29 C.F.R. §§ 570.41–49, .120. Among the occupations so banned since 1946 are those involving the operation of power-driven hoisting apparatus or forklifts as set forth in Hazardous Order No. 7, which appears at 29 C.F.R. § 570.58; 11 Fed.Reg. 7719. It is well-established that Congress' determination—and by its explicit delegation that of the Secretary—as to what is an unpermitted occupation, is binding on the courts. *Lenroot v. Interstate Bakeries Corp., supra,* 146 F.2d 325. *See Breitwieser v. KMS Industries, Inc.,* 467 F.2d 1391, 1392 (5th Cir.1972), *cert. denied,* 410 U.S. 969, 93 S.Ct. 1445, 35 L.Ed.2d 705 (1973) (operation of forklift truck as part of 16 year old's employment constitutes a vio-

lation of the Act). *See also, Winchell's Donut House v. U.S. Department of Labor,* 526 F.Supp. 608 (D.C.D.C.1980), *aff'd* 672 F.2d 898 (D.C.Cir.1982). Courts have thus consistently held that the employment of minors between the ages of 16 and 18 years old constitutes "oppressive child labor" because the duties of the children employees were within those occupations deemed "particularly hazardous" by the Secretary. 29 C.F.R. § 570.50-.72. *See, e.g., Hodgson v. Cactus Craft of Arizona,* 481 F.2d 464 (9th Cir.1973) (power-driven woodworking machine); *Goldberg v. Fritschy, supra,* 198 F.Supp. 743 (motor vehicle driver and helper); *Mitchell v. Thaxton,* 13 Wage–Hour Cases 575 (N.D. Ga.1958) (power-driven woodworking machines).

## VII. DEFENDANTS' VIOLATIONS OF THE MINIMUM WAGE OVERTIME COMPENSATION AND OPPRESSIVE CHILD LABOR PROVISIONS OF THE ACT ARE WILLFUL

 In accordance with § 6(a) of the governing Portal-to-Portal Act of 1947, 29 U.S.C. § 255(a), Plaintiff may allege violations of the minimum wage, overtime compensation and oppressive child labor provisions of the FLSA and recover back wages for a period from three years prior to the filing of the Complaint if the defendants: (1) were aware that the Act was potentially applicable to their employment practices; and (2) failed to obtain a reliable basis for assuring that such practices complied with the Act. *Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113, 1117 (4th Cir.1985); *Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1039 (11th Cir.1985); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 461–462 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1181, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Hodgson v. Cactus Craft of Arizona, supra,* 481 F.2d 464.

 Moreover, Defendants have failed to plead the statute of limitations as an affirmative defense as required and as discussed *infra,* have thus waived the defense. See, *Donovan v. M & M Wrecker Service,* 733 F.2d 83 (10th Cir.1984); *Mumbower v. Callicott,* 526 F.2d 1183, 1187, n. 5 (8th Cir.1975).

## VIII. EMPLOYEES CANNOT WAIVE THE PROTECTIONS AFFORDED BY THE FLSA OR THE OBLIGATION OF EMPLOYERS NOT TO EMPLOY OPPRESSIVE CHILD LABOR OR TO PAY THE STATUTORILY PRESCRIBED MINIMUM WAGE AND OVERTIME COMPENSATION

 It is well established that protections afforded by the FLSA may not be waived by agreement between employer and employee. *Tony and Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); *Barrentine v. Arkansas–Best Freight Systems, Inc.,* 450 U.S. 728, 742, 101 S.Ct. 1437, 1445–46, 67 L.Ed.2d 641 (1981). Backwages due employees may not be retained by the employer even if employees refuse to accept the wages or cannot be found. In such cases the funds must be paid into the Treasury of the United States. *See e.g., Hodgson v. YB Quezada,* 498 F.2d 5 (9th Cir.1974); *Hodgson v. Wheaton Glass Co.,* 446 F.2d 527 (3d Cir. 1971); *Burk Builders, Inc. v. Wirtz,* 355 F.2d 451, 453 (5th Cir.1966); *Wirtz v. Jones,* 340 F.2d 901, 904 (5th Cir.1965); *Bingham v. Airport Limousine Service,* 314 F.Supp. 565, 573 (W.D.Ark.1970); *Mitchell v. Sky Top Coal,* 181 F.Supp. 899, 900 (E.D.Pa.1960); *Hodgson v. Prior,* 340 F.Supp. 386, 388 (S.D.Ohio), 1972); *Shultz v. Bob Johnson Meat Co.,* 306 F.Supp. 720, 722 (C.D.Calif.1969).

## IX. PLAINTIFF IS ENTITLED TO RESTITUTIONARY INJUNCTIVE RELIEF RESTRAINING DEFENDANTS FROM WITHHOLDING THE PAYMENT OF BACKWAGES DUE PURSUANT TO § 17 OF THE ACT

 Section 17 of the Act, 29 U.S.C. § 217, provides: "... the district court shall have jurisdiction, for cause shown, to restrain violations of Section 15 ..."

Once minimum wage or overtime compensation violations are established and unpaid wages found due:

> ... the district court's discretion to deny the injunction where it makes such a finding is severely limited and must be exercised with an eye to the purposes of the Act. *Donovan v. Brown Equipment and Service Tools, Inc.*, 666 F.2d 148, 157 (5th Cir.1982). Those purposes are first, the compensation of the employees for their losses and second, the correction of a continuing offense against the public interest by increasing the effectiveness of the Act's enforcement.... This latter purpose is accomplished by divesting a violator of any gains accruing through this violation and by protecting those employers who comply with the Act's wage requirements from the unfair competitive advantage which would otherwise be enjoyed by non-complying employers. [citing] *Marshall v. Chala Enterprises, Inc.*, 645 F.2d 799, 803 (9th Cir.1981); *Marshall v. A & M Consolidated Independent School District*, 605 F.2d 186, 189 (5th Cir.1979); *Wirtz v. Malthor*, 391 F.2d 1, 3 (9th Cir.1968).

*Donovan v. Grantham*, 690 F.2d 453, 456 (5th Cir.1982).

Good faith, if any, on the part of an employer is not a proper ground for the denial of a restitutionary injunction. *Id.* at 456–57; *Brown Equipment, supra*, 666 F.2d at 156; *A & M Consolidated, supra*, 605 F.2d at 190.

### Evidence to Establish Amount Due.

██ An award of backwages may properly be made based upon employee pattern and practice testimony, such payroll and other records as are available, and the reconstruction of hours worked and backwage computations made by Compliance Officers of the U.S. Department of Labor's Wage and Hour Division. *New Floridian Hotel, supra*, 676 F.2d at 472 n. 7; *Marshall v. Mamma's Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir.1979); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir.1981). Particular reliance has been

placed upon the expertise of the Labor Department's Compliance Officers to fashion an approach for calculation of backwages due which is "reasonable and logical." *E.g., Donovan v. Doyon Drywall, Inc.*, 94 CCH Lab.Cas. ¶ 34,208, (M.D.Fla.1982) [Available on WESTLAW, 1982 WL 2186].

## X. PLAINTIFF IS ENTITLED TO AN INJUNCTION PERMANENTLY ENJOINING FUTURE VIOLATIONS OF THE MINIMUM WAGE, OVERTIME COMPENSATION, RECORDKEEPING AND OPPRESSIVE CHILD LABOR PROVISIONS PURSUANT TO § 17 OF THE ACT

██ Section 17 of the Act grants jurisdiction to Federal District Courts "to restrain violations" of the Act. 29 U.S.C. § 217. It is well established that where there is a finding of clear violations of the Act, an injunction against the commission of future violations should normally issue. *McComb v. Homeworkers Handicraft Coop*, 176 F.2d 633 (4th Cir.1949); *Brennan v. Correa*, 513 F.2d 161, 163 (8th Cir.1975); *Wirtz v. Durham Sandwich Co.*, 259 F.Supp. 710 (M.D.N.C.1963), *aff'd*, 367 F.2d 810 (4th Cir.1966). As the Fifth Circuit explained in *Goldberg v. Cockrell*, 303 F.2d 811, 813 (5th Cir.1962):

> Issuance of an injunction in cases such as these does not subject an employer to any penalty for his past violations of the law. It merely says: In the future do what the law requires you to do. The injunction shifts the responsibility for compliance onto the employer's shoulders.

*Accord, Hodgson v. Approved Personnel Service*, 529 F.2d 760, 764 (4th Cir.1975). As the court in *Cockrell* went on:

> The Wage and Hour Division cannot reasonably be charged with the responsibility of checking back on past violators to make sure that they are obeying the laws. Fairness and the economy of administrative effort both dictate that after an employer has once violated the Act he should bear his own responsibility for the future.

*Id.*

It is well settled that the court's discretion regarding the grant or denial of injunc-

tive relief against future violations must be exercised in light of the remedial purposes of the Act. *Marshall v. Chala Enterprises, Inc., supra*, 645 F.2d at 802. Of particular importance here is the explicit statutory objective to "abolish 'oppressive child labor' and [the court's discretion] must be measured by the standards of the public interest in putting an end to that evil...." *Lenroot v. Interstate Bakeries*, 146 F.2d 325, 327 (8th Cir.1945). Other courts have similarly not hesitated to enter injunctions restraining child labor violations. *E.g., Marshall v. Lane Processing, Inc.*, 606 F.2d 518, 519 (8th Cir.1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980); *Goldberg v. Fritschy, supra*, 198 F.Supp. 743; *Lenroot v. Kemp, supra*, 153 F.2d 153; *Gulf King Shrimp v. Wirtz*, 407 F.2d 508, 516 (5th Cir.1969).

In view of Defendants' continued violations, despite the entry of the Preliminary Injunction specifically prohibiting such conduct, the issuance of a permanent injunction is clearly mandated.

## XI. PLAINTIFF IS ENTITLED TO PRE-JUDGMENT INTEREST ON BACK-WAGES FOUND DUE

■■ "The overwhelming weight of authority is that prejudgment interest should generally be included in a back pay award in an injunction action under § 17 of the FLSA...." *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 57 (2nd Cir.1984); *Brock v. Richardson*, 812 F.2d 121, 126–127 (3d Cir.1987); *Secretary of Labor v. Daylight Dairy Products, Inc.*, 779 F.2d 784, 789–790 (1st Cir.1985); *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191, 1194 (5th Cir.1976). Indeed, "it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award under the FLSA." *Sovereign Security, supra*, 726 F.2d at 58. An award of prejudgment interest makes up for the "delay in receiving [back wages], during which time the employees [are] denied [the] use [of their wages]," and "serves to remedy the competitive disadvantage inflicted on law-abiding businesses by denying the errant employer the free use of the money it should have paid out in wages." *Id.* at 58.

## MOTIONS

■■ (1) On the fifth day of trial, Saturday, January 23, Defendants' attorney, W. James Chandler, Jr., moved that the Court recuse itself because of certain language included in a Memorandum of Decision filed September 10, 1987 in the case entitled *Shiloh True Light Church of Christ v. William E. Brock, Secretary of Labor, U.S. Dept. of Labor*, C–C–86–463–P.

Mr. Chandler took out of context a paragraph from the 10–page decision. That paragraph read:

> In the case before the Court, (*Brock v. McGee, supra*) Defendant McGee's employment of minors in the occupations not permitted under the regulations, and the failure to abide by the minimum hourly rates, and overtime requirements of the FLSA, whether in the name of religion or not, are matters clearly subject to regulations under the powers delegated to Congress, to promote the health, safety, and general welfare, of the people.

The Memorandum of Decision was in support of an order dismissing the Church's suit against the Secretary of Labor praying the Court to enjoin the Defendant (Brock) from obtaining the relief sought and for a declaration that the enforcement of the provisions of the FLSA as respect to the vocational training program of the Church would infringe on the Church's First Amendment rights. The Church filed notice of appeal of the Court's Order and then withdrew the appeal.

Mr. Chandler asserted to this Court that the Court had made a finding of fact in that order and therefore had indicated its bias toward the Defendants.

A cursory reading of the Memorandum of Decision would clearly indicate that the Court had stated in brief form the Church's contentions and the Secretary's contentions and that the Court, in the paragraph cited, was referring to the contentions of the Secretary and concluded that the Church had no standing to try to enjoin the Secretary from enforcing the law prohibiting the

employment of minors. Obviously, the Court was assuming that the Order would be read in its entirety and when read in its entirety would clearly demonstrate the Court's meaning. Defendant's Motion does not include any of the conditions in 28 U.S.C. § 455 requiring that this Court disqualify itself, and is nothing more than an attempt by Defendants to delay further a finding of violations of the FLSA. The Motion was denied in open court.

(2) The Plaintiff moved at the conclusion of all the evidence that the pleadings be amended to conform to the evidence. The Motion is allowed pursuant to Rule 15 of the Fed.Rules of Civ.P.

(3) The Plaintiff moved that the Court consolidate the action against Defendant McGee (C–C–86–173–P) and the action against Wendell's Woodwork (C–C–87–420–P). Plaintiff's Motion is denied, except as to the extent granted in this Court's Order filed January 14, 1988.

In summary:

(1) Jurisdiction of the parties and the subject matter is conferred upon the Court pursuant to § 17 of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201, *et seq.*], hereinafter the FLSA or the Act.

(2) Venue is proper in this Court.

(3) At all times pertinent hereto, Defendants have employed the employees for whom enforcement of statutory protections is sought.

(4) Defendants, Samuel A. McGee, Donald R. McGee, Michael R. McGee, R. Bill McGee, and Cletus B. Huntley, at all times pertinent hereto, have acted directly or indirectly in the interest of Defendant corporation, McGee Brothers Company, Inc., in relation to its employees, and therefore have been employers within the meaning of § 3(d) of the Act [29 U.S.C. § 203(d)].

(5) Defendants' masonry construction firm constitutes an enterprise engaged in commerce or in the production of goods for commerce within the meaning of §§ 3(r) and 3(s)(4) of the Act [29 U.S.C. §§ 203(r) and 203(s)(4)].

(6) a. Since April 7, 1983, Defendants have violated the minimum wage provisions of the Act at 29 U.S.C. §§ 206 and 215(a)(2) by failing to pay employees at the applicable minimum hourly rate of $3.35 for all hours worked.

b. Defendants must count all hours during which they suffered or permitted employees to work as compensable time for which employees must be paid at no less than $3.35 for each hour.

c. Defendants have failed to maintain adequate records of all hours worked by employees, and Plaintiff has produced evidence from which such hours worked can be determined by just and reasonable inferences. Defendants have not sustained their burden of proof to show the actual hours worked by each employee or by negating the reasonableness of the inferences raised by Plaintiff's evidence.

(7) a. Since April 7, 1983, Defendants have violated the overtime compensation provisions of the Act at 29 U.S.C. §§ 207 and 215(a)(2) by failing to include monthly production bonuses in their calculation of the employees' regular rates of pay.

b. Defendants' failure to plead affirmatively that the production bonus is excludable from the regular rate of pay constitutes a waiver of such affirmative defense.

c. In any event, Defendants have not met their burden of establishing that the monthly production bonus is excludable from the regular rate of pay pursuant to 29 U.S.C. § 207(e)(3).

(8) As a result of Defendants' violations of the minimum wage and overtime provisions of the Act, 219 of their employees are due at least $98,225.07 in unpaid minimum wages and overtime compensation for the periods shown in Schedule "A" attached to the Judgment.

(9) Since April 7, 1983, Defendants have violated the recordkeeping provisions of the Act at 29 U.S.C. §§ 211(c) and 215(a)(5) and the regulations at 29 C.F.R. Part 516 by failing to make, keep and preserve adequate records of the persons employed and of the wages, hours and other conditions and practices of employment.

(10) Since April 7, 1983, Defendants have violated the provisions of the Act at 29 U.S.C. §§ 212(c) and 215(a)(4) which prohibit the employment of oppressive child labor within the meaning of § 3(*l*) by employing underage minors in occupations not permitted and for more hours than permitted by § 3(*l*) and Child Labor Regulation 3 [29 C.F.R. § 570.31–.38].

(11) Since April 7, 1983, Defendants have violated the oppressive child labor provisions at 29 U.S.C. §§ 212(c) and 215(a)(4) and Hazardous Order No. 7 which appears at 29 C.F.R. § 570.58 by employing minors under the age of 18 years in the operation of power-driven hoisting apparatus.

(12) a. Defendants' violations of the minimum wage, overtime compensation and oppressive child labor provisions of the Act were willful, thereby invoking a three-year statute of limitations. 29 U.S.C. § 255.

b. Defendants' failure to plead affirmatively the limitation of action constitutes a waiver of such affirmative defense.

(13) Employees may not waive the protections afforded by the FLSA or the obligation of Defendants to pay the statutorily prescribed minimum wages and overtime compensation.

(14) Defendants should be restrained from withholding the payment of backwages found to be due employees as a result of their violations of 29 U.S.C. §§ 206, 207, and 215(a)(2) of the Act.

(15) Defendants, their agents, servants, employees, attorneys and all persons in active concert or participation with them should be permanently enjoined from violating the minimum wage, overtime compensation, recordkeeping, and oppressive child labor provisions of the Act.

(16) Defendants should be ordered to pay pre-judgment interest on backwages found due at the rate of 12% per annum from the date such wages became due.

(17) Plaintiff is entitled to recovery of her costs incurred in this action.

(18) Defendants have not established that "the acts and conduct complained of in Plaintiff's Complaint were undertaken as part of a vocational training program for the benefit of the youth of the community" and, in any event, such contention does not constitute a legally sufficient defense to this action.

(19) Defendants have not established that "the Federal statutes upon which Plaintiff bases her cause of action were not intended to be applied to the factual situation as exists in this case;" and, in any event, such contention does not constitute a legally sufficient defense in this action.

As to the Contempt Proceeding:

(1) Defendants, McGee Brothers Company, Inc., Samuel A. McGee, Donald R. McGee, Michael R. McGee, R. Bill McGee, and Cletus B. Huntley, are adjudicated in civil contempt of the Preliminary Injunction entered by this Court on October 5, 1987, which immediately enjoined them from violating the oppressive child labor provisions of the Act during the pendency of this action.

(2) Defendants have violated the Preliminary Injunction by employing, suffering or permitting minors under the age of 16 years to work in masonry construction and minors under the age of 18 years to operate power-driven hoisting apparatus, occupations which constitute statutory oppressive child labor.

(3) Defendants should be fined the following amounts for each day they remain in contempt of this Court:

| | |
|---|---|
| McGee Brothers Company, Inc. | $10,000 per day |
| Samuel A. McGee | $1,000 per day |
| Donald R. McGee | $1,000 per day |
| Michael R. McGee | $1,000 per day |
| R. Bill McGee | $1,000 per day |
| Cletus B. Huntley | $1,000 per day |

(4) Plaintiff is entitled to an award sufficient to compensate her for the expenses and costs incurred in the investigation and prosecution of this contempt proceeding.

(5) Any Finding of Fact which may be deemed a Conclusion of Law is so deemed and any Conclusion of Law which may be deemed a Finding of Fact is so deemed.

## CONCLUSION

Plaintiff, having met her burden of proof, and Defendants, having failed to rebut Plaintiff's evidence, the Court will file a Judgment granting the relief sought by Plaintiff.

Plaintiff has filed, on February 19, 1988, a report of costs and expenses in the action against Wendell's, *et al.*, C–C–87–420–P, and McGee, *et al.*, C–C–86–173–P. The Court has reviewed the detailed reports and the accompanying affidavits in both cases since it is the responsibility of the judge to make an initial estimate of a reasonable fee by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1983). The Court has considered the work done, the results obtained, and the other pertinent factors listed in the leading case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) cited with approval in *Anderson v. Morris*, 658 F.2d 246 (4th Cir.1981), and concludes that the amounts requested are very reasonable, and the report clearly warrants payment in full of the entire amount claimed of $38,206.42 by Defendant McGee and $31,175.58 by Defendant Wendell, which was incurred in the investigation of Defendants' compliance with an in enforcement of this Court's Preliminary Injunction during the period from October 5, 1987, through February 17, 1988.

NOTE:

(1) There is attached as Schedule "A" hereto the names, dates of birth and categories of illegal employments of the minors who are the subject of the action against Wendell's Woodwork, *et al.*, C–C–87–420–P.

(2) There is attached hereto as Schedule "B" the names, dates of birth, and categories of illegal employments of the minors who are the subject of the action against McGee Brothers Company, *et al.*, C–C–86–173–P.

SCHEDULE A

WENDELL'S WOODWORK, INC., et al.

| NAME | DATE OF BIRTH | PRIOR TO AGE 14 | PRIOR TO AGE 16 IN MANUFACTURING | PRIOR TO AGE 18 TO OPERATE POWER DRIVEN WOODWORK MACHINES | PRIOR TO AGE 18 TO OPERATE POWER DRIVEN SAWS | PRIOR TO AGE 18 AS FORKLIFE OPERATOR | PRIOR TO AGE 18 AS DRIVER OF VEHICLE |
|---|---|---|---|---|---|---|---|
| 1. Patrick Ferguson | 07/04/71 | | | | | | |
| 2. David Haney | 05/04/71 | x | x | x | x | x | |
| 3. Reginald Love | 03/15/70 | | | | | | x |
| 4. Chris Mullis | 07/12/74 | x | x | x | x | x | |
| 5. Michael Smith | 09/05/74 | x | x | x | x | x | |
| 6. S. Glenn Mullis | 09/02/67 | | | x | x | x | |
| 7. Jeffrey Taylor | 04/06/71 | | x | x | x | x | |
| 8. Karsten Shane Ferguson | 06/25/72 | x | x | x | x | x | |
| 9. Barbara Mullis | 11/11/68 | x | x | x | x | x | |
| 10. Susan Mullis | 06/20/72 | x | x | | | | |
| 11. Ursula Haney | 03/29/74 | x | | | | | |
| 12. Patricia Mullis | 10/06/76 | x | | | | | |
| 13. Aretha York | 10/20/73 | x | | | | | |

SCHEDULE B

McGEE BROTHERS COMPANY, INC., et al.

| NAME OF MINOR | DATE OF BIRTH | ILLEGAL EMPLOYMENTS | | |
|---|---|---|---|---|
| | | PRIOR TO AGE 14 | PRIOR TO AGE 16 IN CONSTRUCTION | PRIOR TO AGE 18 AS FORKLIFT OPERATOR |
| 1. Bradley Irwin Braswell | 11/26/71 | | x | x |
| 2. Carol Elizabeth Braswell | 11/26/71 | x | | |
| 3. Patrick L. Braswell | 09/03/74 | | x | |
| 4. Richard Trent Braswell | 05/04/70 | | x | x |
| 5. Karstan Shane Ferguson | 06/25/72 | | x | x |
| 6. Patrick Ferguson | 07/04/71 | | x | x |
| 7. Terry L. Greene | 04/08/69 | | x | x |
| 8. Scott M. Griffin | 07/11/68 | | x | x |
| 9. James Pearl Hill | 10/20/67 | | x | x |
| 10. ~~James (Jody) K. Hill~~ | ~~06/10/70~~ | | ~~x~~ | ~~x~~ |
| 11. Buffy Huntley | 10/27/75 | x | | |
| 12. ~~David Cheston Huntley~~ | ~~05/11/71~~ | | ~~x~~ | ~~x~~ |
| 13. James Gregory Huntley | 09/22/67 | | x | x |
| 14. ~~Stephen Kent Huntley~~ | ~~11/08/69~~ | | ~~x~~ | ~~x~~ |
| 15. Regional Love | 03/15/70 | | x | x |
| 16. Ashlyn A. McGee | 10/22/72 | x | | |
| 17. Brandon McGee | 04/15/74 | | x | x |
| 18. Chandler McGee | 06/14/69 | | x | x |
| 19. Christopher L. McGee | 10/30/67 | | x | x |
| 20. ~~Clifton H. McGee~~ | ~~04/07/70~~ | | ~~x~~ | ~~x~~ |
| 21. Douglas B. McGee | 03/19/69 | | x | x |
| 22. Garrett McGee | 06/05/74 | | x | x |
| 23. Gwendolyn Joy McGee | 07/22/73 | x | | |
| 24. James Rodney McGee | 07/11/68 | | x | x |
| 25. Mary Kathryn McGee | 12/15/73 | x | | |
| 26. Natalie Jane McGee | 10/12/75 | x | | |
| 27. Robert Patrick McGee | 04/30/72 | | x | x |
| 28. Tanya Leigh McGee | 08/05/72 | x | | |
| 29. Travis Scott McGee | 05/14/75 | | x | x |
| 30. Randolph Scott Mangum | 08/05/71 | | x | x |
| 31. Susan Mullis | 06/20/72 | x | | |
| 32. Louis Curtis Munn III | 06/28/68 | | x | x |
| 33. Bradley Wilson Purser | 11/09/70 | | x | x |
| 34. Henry Darren Purser | 12/12/74 | | x | x |
| 35. Nathan Bryant Purser | 12/28/75 | | x | x |
| 36. Tyrie L. Reynolds | 06/16/70 | | x | x |
| 37. Michael Edwards Watkins | 05/31/68 | | | x |
| 38. Charles Ray Watson, Jr. | 06/08/69 | | | x |
| 39. Tammy Watson | 09/30/71 | x | | |
| 40. Anthony David York | 03/04/74 | | x | x |
| 41. Jonathan Quinn York | 09/05/74 | | x | x |
| 42. Randall Von York | 12/21/71 | | x | x |
| 43. Stephen Henry York | 12/26/72 | | x | x |

| NAME OF MINOR | DATE OF BIRTH | PRIOR TO AGE 14 | ILLEGAL EMPLOYMENTS | | |
| | | | PRIOR TO AGE 16 IN CONSTRUCTION | PRIOR TO AGE 18 AS FORKLIFT OPERATOR | PRIOR TO AGE 18 AS DRIVER OF VEHICLE |
| --- | --- | --- | --- | --- | --- |
| 12. David Cheston Huntley | 05/11/71 | | x | x | x |
| 14. Stephen Kent Huntley | 11/08/69 | | x | x | x |
| 20. Clifton H. McGee | 04/07/70 | | | x | x |
| 44. Todd Austin | 10/04/69 | | | x | |
| 45. Richard Allen Bush, Jr. | 04/24/73 | x | x | x | |
| 46. Steven Ray Kelley | 10/06/69 | | x | x | |
| 47. Harvey Woodrow Mullis | 07/23/69 | | x | x | |
| 48. Westin B. Mullis | 01/02/71 | | x | x | |
| 49. John Marshall Munn | 02/20/70 | | | x | |
| 50. William Dalton Reynolds | 05/18/74 | x | x | x | |
| 51. Kevin Hallman | 09/09/68 | | | x | |
| 52. Eddie Hendricks | 12/24/75 | x | x | x | |
| 53. Barbara Joy McGee | 09/19/76 | x | | | |
| 54. Jennifer C. McGee | 08/09/76 | x | | | |
| 55. Sandra D. McGee | 12/11/72 | x | | | |
| 10. James (Jody) K. Hill | 06/10/70 | | x | x | x |