**Ann McLAUGHLIN, Secretary of Labor, U.S. Department of Labor, Plaintiff,**

v.

**STINECO, INC., Steven E. Stines and James A. Courtney, Jr., Defendants.**

**No. 86–573–CIV–ORL–19.**

United States District Court,
M.D. Florida,
Orlando Division.

June 30, 1988.

---

Patricia J. Craft, U.S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Sam E. Murrell, Jr., Steven E. Stines, and James A. Courtney, Orlando, Fla., for defendants.

## ORDER

FAWSETT, District Judge.

This cause came before the Court as trier of fact for trial beginning January 7, 1988. This action is brought by the Secretary of Labor[1] to enforce the provisions of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, seeking injunctive relief pursuant to section 17 of the FLSA, 29 U.S.C. § 217. More specifically, Plaintiff seeks a restitutionary injunction against the withholding of back pay and interest by the Defendants, and a prospective injunction against violations of the FLSA by the Defendants.[2]

The Court finds that the Defendants violated section 6 of the FLSA, 29 U.S.C.

---

1. On *ore tenus* motion, Ann McLaughlin was substituted as Secretary of Labor for the United States Department of Labor, Plaintiff, upon resignation of William E. Brock.

2. A default was entered pursuant to Federal Rule of Civil Procedure 55(a) against Defendant Stineco, Inc., leaving the issue of the amount of damages for that Defendant to be determined at trial.

§ 206, by failing to pay wages to certain employees for work performed. Defendants further violated the overtime compensation provisions of section 7, 29 U.S.C. § 207, by paying straight time wages to hourly workers who worked over 40 hours in a week and by paying certain non-exempt employees salaries for all hours worked which did not yield compensation at one and one-half times such employees' regular rates of pay for overtime hours in excess of forty hours worked in a work week. Defendants violated the record-keeping provisions of section 11(c), 29 U.S. C. § 211(c), and 29 C.F.R. § 516 by failing to make, keep and preserve records of the persons employed and of the wages, hours and other conditions and practices of employment maintained by Defendants. Finally, Defendants violated section 12(c), 29 U.S.C. § 212(c), and 29 C.F.R. §§ 570.67 and 570.35 by employing minors under the age of 18 years in a particularly hazardous occupation involving roofing, and by employing a minor under the age of 16 years during hours not permitted by such regulation.

After consideration of the evidence presented at trial, the stipulations of the parties, and the balance of the record herein the Court concludes that it has jurisdiction of the matter and therefore enters its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as follows:

## FINDINGS OF FACT

In accordance with the admitted facts contained in the Pretrial Stipulation [3], Defendant Stineco, Inc. ("Stineco") was a corporation with its principal place of business in Orange County, Florida and was engaged as a framing contractor in the construction of single and multi-family housing.[4] Stineco commenced business on April 29, 1985 and issued 10,000 shares of its stock, 5,000 to Defendant Steven E. Stines ("Stines") and 5,000 to Defendant James A. Courtney, Jr. ("Courtney"). Stines and Courtney remained equal shareholders throughout the duration of Stineco's existence,[5] with Courtney acting as its president and Stines acting as its secretary-treasurer. At all times material to this case, Stines and Courtney had through their positions with Stineco the authority to hire and fire employees, set pay rates of employees, determine the number of employees, determine the duty of employees, grant pay raises, and determine which records of the employees of Stineco would be kept and maintained. Stines and Courtney exercised this authority.

Furthermore, during the period from January 1, 1984 through April 29, 1985 Stines, doing business in Orange County, Florida, engaged as a proprietor and framing contractor in the construction of single and multi-family housing. At such times, Stines had the authority to hire and fire employees, set pay rates of employees, determine the number of employees, determine the duty of employees, grant pay raises, and determine which records of his employees would be kept and maintained. Stines exercised this authority.

The evidence of record establishes that prior to the incorporation of Stineco, Stines hired persons to perform work in his construction crews and often personally served as foreman of such crews. With the incorporation of Stineco the Defendants hired foremen who hired crew members on behalf of the Defendants and directed the work of the Defendants' crews. After the incorporation, the foremen and crew members were paid for work performed, if at all, in cash or by Stineco company checks,

---

**3.** Plaintiff's Motion for Rule 16(f) sanctions (Doc. No. 27, filed September 25, 1987) was granted by Order of the Court dated October 8, 1987 (Doc. No. 34), and the Document filed at Docket Entry 35 on October 8, 1987 was deemed the Pretrial Stipulation of the parties.

**4.** At all times material to this action the employees of the Defendants handled goods or materials that had been produced at or shipped from points outside of the State of Florida.

**5.** Stineco was involuntarily dissolved by the State of Florida on November 14, 1986 for failure to file its annual report. Default was entered against Stineco in this action on January 8, 1988.

always in gross amounts with no deductions withheld.

The evidence was overwhelming that Defendants Stines, Courtney and Stineco did not make payment to their employees for all wages due. This was confirmed by the testimony of such witnesses as Kevin Robert Kennedy, Greg Allen Bear, Allen C. Lane, Jr., Justin Pasag, Terry Gilliard, Keith Beaudoin, Juan Crispin, Christopher Laurence Musch, Robert C. Staats, Robert Norman Herring and Gerald Saunders. These men testified as to the lack of payment of wages to themselves and to co-workers in their crew. Robert C. Staats and Gerald Saunders also testified to the receipt of bad checks from Stineco.

The employees of the Defendants testified that their usual work day began between 7:00 and 7:30 a.m. and lasted until 4:00 to 4:30 p.m. with one-half hour for lunch. The workers testified that they worked from one to three Saturdays per month for one-half to one whole day on Saturday, making the average work week between 48 to 55 hours per week. Several employees of Defendants testified that they and their co-workers were not paid for time and one-half for their hours of work which exceeded forty hours per week.[6]

No records of any defendant with reference to hours of work and wages paid were produced at the trial. In particular, Armando Brana, Compliance Specialist, U.S. Department of Labor, Wage and Hour Division, testified that when he requested these records, Defendants Courtney and Stines refused to produce any records for themselves or for the Defendant corporation concerning employees and wages paid.

Defendants engaged minors to work on their construction projects in a manner which violated FLSA. In particular, Greg Allen Bear testified that he was born August 23, 1967, and while he was 17 years of age he worked from July of 1985 until September of 1985 as an employee of Defendant Stineco on the roofs of two and three story apartment complexes, and on sidings and scaffoldings as well as overhang soffits. He also testified that he worked on the tarpaper and flashing around the chimneys on these multi-story buildings. Additionally, Justin Pasag testified that he was born December 22, 1969, and that while he was 15 years of age, he was hired by the Defendant Stineco and worked on the roof of a two-story building.

Defendants raise as a defense that their former employees who testified in this case were independent contractors hired by Stineco, Inc. to perform a particular phase of a job. Defendants deny that such witnesses were ever employees of themselves or the Defendant corporation.

The Court finds that the facts surrounding the alleged employment relationship do not indicate independent contractor status.[7] For instance, various employees testified that they did not receive greater profit if they did a faster or better job and that they reported to work as a member of a crew, looking to their crew leader or foreman to tell them when to report to work and when to leave. They worked as members of the crew, or as foreman of a crew, to complete various carpentry phases of the development on which the Defendants had agreed to act as subcontractor. The majority of these employees did not carry liability insurance, did not have occupational licenses, carried no worker's compensation, and took limited tools such as a pouch, hammer, saw, and T-square, to the job. They did not bring to the job site larger tools required in their work, and the larger tools were provided by Defendants. The employees made little investment in their equipment and had no investment in any facilities. No social security deductions or other deduc-

---

6. While these witnesses testified that they were paid on an hourly basis for their work, witnesses Jeff Lebo and Christopher Laurence Musch testified that they were paid weekly for their work. Both men testified that they worked in excess of forty hours a week but received their regular weekly salary without any addition for their overtime hours.

7. After observing the demeanor of the witnesses and hearing their testimony, the Court rejects the testimony of Robert Thomas Campbell, Steve Pickerel and Gary D. Stines to the contrary.

tions were withheld from their paychecks. These workers had a day to day relationship with the Defendants, generally did not do piece work and were not paid at a piece rate by Defendants on the work in question.[8] None of Defendants' foremen and crew members were hired at a given dollar amount for completion of a specific job or project. They had no control over the order and time to complete a project and depended for their income on their work as employees of Defendants. Their work was manual labor, not managerial work. They did not sign any agreement purporting to make them independent contractors.

Although the checks issued by Stineco to its employees designated that they were for "contract labor", the testimony in this case conclusively refutes this characterization. In particular, Kevin Robert Kennedy, Billy A. Lane, Terry Gilliard, Keith Beaudoin, Juan Crispin, Jeff Lebo, Christopher Lawrence Musch, Robert Norman Herring and Gerald Saunders specifically denied that they or members of their crew with whom they were familiar acted as independent contractors with Defendants in the work they performed as employees of Defendants.

Samuel M. Coniglio, III, Vice–President of Construction of Del American Properties, Inc. from 1983 until approximately six months prior to the trial, testified that his former employer had four contracts with Stineco, Inc. to perform carpentry work on four projects, Hidden Creek, Hidden Springs, Hidden Village and Sun Beach Club, the latter being located in New Smyrna Beach. After ascertaining that Stineco had not paid its employees, Coniglio had a meeting with Defendant Stines to ascertain why payments had not been made by Stineco to its employees after Stineco received payment from Del American Properties for work performed. Coniglio testified there was no clear explanation given by Defendant Stines and that Coniglio talked with him many times over the next three months in an effort to avoid a direct lien being filed on the property. Coniglio testified that Del American eventually resorted to direct payments to the employees of Stineco when the matter could not be resolved with Stines. Coniglio testified that the four contracts were entered into by his employer, Del American Properties, and Defendant Stineco, Inc. in May or June of 1985, and that for part of August and continuing through November of 1985, solving the lack of payment by Stineco to its employees for work on the Del American project was a full-time job for this witness. Coniglio testified concerning a meeting with Defendant Stines in a trailer with approximately 100 angry employees of Stineco waiting outside to be paid. Coniglio and Stines went through twenty to twenty-five Stineco employees by name and dollar amount which each employee stated he was owed. Coniglio testified that Stines challenged the rate of pay, the hours worked and whether the employee should be paid at all. However, Stines made no mention that any of the Stineco employees were independent contractors. The meeting was terminated when six police cars were summoned to break up the melee outside. Coniglio also testified as to the amounts paid directly by Del American Properties to the Stineco employees.

A large number of the employees of the Defendants testified to the operative facts of this case. Kevin Robert Kennedy testified that he worked for Stineco, Inc. from August 1 to September 5, 1985, being hired by Jeff Lebo, his supervisor on behalf of Stineco, Inc. at the rate of $6.50 an hour. Kennedy worked at the Hidden Springs project with approximately fifteen other Stineco employees in a crew, headed by Jeff Lebo, which included Robert Herring and David Henshilwood. Kennedy testified that he did not receive pay for approximately seventy hours of work he did for Stineco and further that he did not receive overtime pay.[9] Kennedy testified that

---

8. The evidence reflects that Jeff Lebo and Denise Smith were paid on a piece rate basis for a part of their term of employment.

9. Kennedy testified that Monday through Friday he reported to work at 7:00 a.m. with a half hour lunch and work ending between 4:00 and 4:30 p.m. He also testified that he worked on

Henshilwood worked on the same buildings and, although hired approximately one month after Kennedy, that Henshilwood worked for approximately one month for basically the same hours. No social security or other deductions were made from amounts which Kennedy did receive from Stineco. Kennedy testified that Jeff Lebo did keep a record of the time that he worked which Kennedy compared with his own calendar (Plaintiff's Exhibit 4), but that Kennedy was not paid for all hours worked.

Greg Allen Bear testified that he worked from July 1985 until September 1985 for Stineco at Hidden Springs while he was 17 years old. Gary Stines, brother of one of the Defendants, hired Bear along with Billy Lane, Allen Lane, and Justin Pasag. Stineco agreed to pay $30.00 an hour for the work of all four men. The four employees worked together for awhile and then were separated and paid separately, Bear then being paid at the rate of $6.00 an hour. Bear testified that he, the two Lane brothers and Pasag worked the same hours while separated and drove to and from work together. Later, Barry Coglin replaced Gary Stines as supervisor and directed the employees in their work at the site. Bear performed roofing work although he was only 17 years of age. He testified that he arrived at work around 7:30 and left about 4:30 each day with one-half hour for lunch. He worked from 40 to 45 hours a week and worked some Saturdays for a 48 hour week without receiving overtime pay. Bear also testified that he was not paid for approximately 113 hours of work and that when he spoke to Defendant Stines about this, Stines advised Bear that Stines would take care of the problem.

Billy A. Lane testified that he began work for the crew around 7:00 to 7:30 a.m. in accordance with the instructions of Berry Coglin. He usually worked until 3:30 p.m. and worked on Saturdays once very other week from four to five hours. Billy Lane testified that he was not paid time and a half for overtime and was not paid Saturday from 7:00 a.m. to 3:00 to 3:30 p.m.

for all the time that he had worked by Stineco, although he was paid for his "straight time" by Del American Properties. Allen C. Lane, Jr. testified that he was employed by Stineco from July to September 20, 1985 on the Hidden Springs project with about twenty other people in a crew. He testified that he worked from 7:00 to 7:30 a.m. until around 5:00 p.m. with one-half hour for lunch and that he worked every Saturday except during a hurricane, approximately 50 hours a week. Allen Lane testified that he did not receive pay for three weeks of work from Stineco although Del American paid him $1500 for the last two weeks of work and that he did not receive overtime pay. Mr. Lane testified that members of the crew asked Steve Stines and James Courtney when they would get paid.

Justin Pasag testified that he was employed by Stineco for three to five weeks when he was 15 years of age to work on roof construction, performing work similar to that of Greg Allen Bear. Pasag testified that he arrived at work between 7:00 and 7:30 a.m., quitting between 4:30 to 5:00 p.m. with one-half to one hour for lunch. He also worked at Hidden Springs with a crew of fifteen to twenty people. Pasag testified that he worked every Saturday and that he was not paid in full for his work nor did he receive overtime pay. Mr. Pasag worked in excess of 40 hours per week.

Terry Gilliard testified that he was employed by Stineco from March through June of 1985. Defendant Courtney hired him for carpentry work at $7.50 an hour which was raised to $8.00 an hour within a couple of weeks. At Shadow Bay, Jeff Lebo was his foreman. Gilliard stated that he also worked at a Curry Ford Road job and at Hidden Springs. On all three jobs he worked for Stineco. Gilliard testified that his hours varied according to the weather, and that during good weather he and his crew would work thirty-five to forty-five hours a week, Monday through Friday, and would work four to six hours two to three Saturdays per month. He testified with a one-half hour break for lunch.

that work would begin at 7:00 a.m. and end around 5:00 p.m. with lunch about noon. Gilliard was paid at the regular rate for all work done without adjustment for overtime. Gilliard testified that Defendant Courtney introduced Gilliard to his foreman, Jeff Lebo, and that Courtney gave him his pay checks.

Keith Beaudoin testified that he was hired by Steve Stines in early December of 1984 continuing through June of 1985. He worked at several different jobs under different foremen, usually in a particular crew. He testified that Steve Stines would give direction to the crew members from time to time. He testified that he worked for Stineco on its crew and that he did not work as an independent contractor for the foreman. Beaudoin testified that he worked from 7:00 a.m. to 5:00 p.m. with a one hour lunch and also worked at least three Saturdays per month. Beaudoin was paid weekly at first, then every two weeks. In late January or early February, Steve Stines stated that Stineco was low on money. Thereafter from time to time Beaudoin was paid, but not the full amount he was owed. Beaudoin estimated that he was owed $3,000 in back pay and that he was paid straight time with no overtime.

Beaudoin also testified about the Avalon job site, including the size of the crew and the number of hours worked. He testified that to his knowledge none of the crew at Avalon was paid.

Juan Crispin testified that he was employed by Stineco, Inc. from August 9, 1985 through October 19, 1985, working with Orlando Montez and Monty Montez at the Hidden Springs project. He was hired by Steve Stines and his cousins, the Montez brothers, were hired by Steve Stines. The Montez brothers and Crispin rode to and from work, beginning work at 7:00 a.m. and ending at 5:00 p.m. with one-half hour for lunch and two 15 minute breaks, one in the morning and one in the afternoon. Crispin was paid $6.50 an hour and his cousins were paid $6.00 an hour each. He testified that he worked seven to eight Saturdays and was not given any overtime pay. Further, he was not paid for all the

work that he did. He testified that he was not paid by Stineco for the last three weeks of work, although he was paid in part by Del American Properties. He testified that he was not paid at all for his last week of work. Orlando Montez also testified that he was hired by Steve Stines and paid $6.00 an hour by Stineco.

Jeff Lebo testified that he was employed by Stineco, Inc., Steve Stines and James Courtney. Lebo stated he worked for Steve Stines in 1983 and 1984 beginning in mid 1984 at Belle Aire Homes for approximately six months during mid 1984 with Denise Smith, the two of them being paid $700 a week. Lebo also worked for Steve Stines at Landstar and Arvida during the first part of 1984, working approximately fifty hours a week for the same weekly rate of pay which he split with Ms. Smith.

Lebo and Smith next worked the Richmond American Project for Steve Stines, splitting their pay of $700 a week equally between them. They worked on this project for three to four months, averaging 50 hours a week. During this period of time, beginning April or May of 1984, Smith and Lebo averaged 50 hours a week of work and did not receive additional monies for overtime.

Around September of 1984 and continuing through the spring of 1985, Defendant Stines put Lebo in charge of crews at other jobs. He was paid $700 a week by Stineco for work beginning at 7:00 a.m. and ending at 4:30 p.m. with one-half hour for lunch and also working each Saturday and some Sundays. For eight months he was a foreman at Del American Project for Stineco where he was to receive, but did not always obtain, payment of $700 a week. He testified that he worked approximately fifty hours a week during this period. Lebo testified to various other projects on which he worked as an employee of Stineco and that Defendants Courtney and Stines were present on the job giving instructions. Lebo testified that Steve Gilliard was employed by Stineco at the Del American Project at the rate of $6.50 an hour, working forty-five to fifty hours a week Monday through Saturday. According to Lebo, Gil-

liard did not get paid for all weeks worked. Bryan Helser was a member of Lebo's crew at the Del American Project working for $7.00 an hour as an employee of Stineco. He, like Gilliard, did not receive pay for two weeks of work although he worked the same hours as Gilliard. Jim Kestler was a member of Lebo's crew at Greater Construction working for $8.50 an hour.[10]

Lebo testified that he worked at the Avalon job site where he observed both Stines and Courtney giving instructions. He stated that there were fifty to seventy-five employees on the job, and that these employees were often not paid.

Christopher Laurence Musch testified that he was employed by Stineco from April 28, 1986 to June 30, 1986 for a weekly salary of $300. He arrived at work at 7:30 a.m. and ended work at 4:30 p.m. with a forty-five minute lunch. He worked three out of four Saturdays each month for one-half day. Defendants Courtney and Stines advised him that he could be a crew leader in a short period of time. When he was not paid his full paycheck, he asked Defendants about the remainder owed him. Musch testified that when he called Courtney, Courtney said Musch should talk to Stines. When he called Stines, Musch testified Stines stated that "he was not going to get his money". Musch testified that he averaged eight and a half to nine hours of work a day Monday through Friday and that he worked six Saturdays in an eight week period. Musch testified that Terry Mueller, another crew member who worked with him on the same hours, did not get paid for all hours that they worked and were not paid any overtime rate.[11]

Richard B. Smith, Jr. testified that he was employed from June of 1985 until No-

vember of 1985 by Stineco at several different projects. He was hired by crew foreman Lebo at $6.00 an hour, working at 7:00 a.m. and ending by 4:00 to 5:00 p.m. He also worked one to two Saturdays each month. Steve Pickerel was also a foreman of his crew. Smith was not paid overtime wages and was not paid for all the work he performed. Smith testified that he and Mark McLean worked together for the same hours for Stineco and further that he worked with Steve Gilliard, Jim Kestler and James Kohler at Shadow Bay and Hidden Springs as employees of Stineco.

Robert C. Staats was employed by Stineco around October of 1985 for four weeks and worked with his son, James Staats and his son-in-law, Roger Holloway.[12] Robert Staats testified that these three employees worked together during the same period of time for the same hours during the same period of time, riding to and from work and having lunch together. All three men earned $9.00 an hour and arrived at work at 7:00 to 8:00 a.m. depending on darkness, stopping after approximately eight hours. Robert Staats stated that he once worked on a Saturday. Staats was given a worthless check by Stineco in the amount of $177.00 for some of the hours he had worked and James Staats and Roger Holloway got bad checks at the same time. Robert Staats testified that other crew members had the same problems receiving pay.

Robert Norman Herring testified that he was employed by Stineco from August of 1985 through November of 1985, working for $6.50 an hour with work beginning at 7:00 a.m. and ending at 4:00 p.m. with a one-half hour lunch. When Herring did not

---

**10.** Lebo testified that he kept the hours of work performed by each employee in his crew which he would tabulate and give to Defendants Stines and Courtney who made up the payroll. He stated that sometimes Courtney and Stines personally passed out checks to employees. Lebo also testified that James Kohler, one of his crew members, was not paid for all his work and that twice Lebo did not have a paycheck for Mark McLean for two weeks of work at $6.50 an hour for the same average weekly work time. Finally, Lebo testified that he knew Rick Martin as an employee of Stineco who was paid a salary

of $200 a week as a foreman. Lebo testified that he hired his crew members for the various Stineco projects and that he gave Defendant Stines a weekly record showing the hours worked for each employee.

**11.** Mr. Mueller is not on the Plaintiff's Exhibits 12 or 13 as an employee to whom money was owed by Defendants.

**12.** Roger Holloway is designated Roger Followay on Plaintiff's Exhibit 13.

get paid for the last two weeks of work, he asked Defendant Stines for his pay but was "put off" by Steve Stines. Herring stated that he rode to and from work with Steve Pickerel and that he worked with Bryan Houser who worked the same hours as Herring but had to quit work when he did not receive his pay and lost his car. Herring testified that he worked ten to twelve Saturdays over a four month period.

Gerald Saunders testified that he worked approximately six weeks for Stineco, beginning at 7:00 a.m. each day and working for eight or nine hours, plus one-half day on Saturdays. He received a check from Stineco which was returned for insufficient funds in the amount of $135.00. He was to be paid $7.50 an hour. He testified that he was owed $60.30 by Stineco.

Armando Brana, Compliance Specialist with the U.S. Department of Labor, Wage and Hour Division, received approximately twenty-six complaints concerning improper payment or non-payment by Stineco of its employees. He first contacted James Courtney on October 15, 1985. Courtney advised Brana that he knew the law and that his people would be paid within the week so that a meeting with Brana would not be necessary. Brana set up a meeting at 10:00 a.m. on October 16, 1985 for Stines and Courtney who did not appear. Brana contacted Steve Pickerel, a foreman for Defendants at a job site and left a message for Courtney and Stines to call him. They did not. Brana then sent another appointment letter which Courtney and Stines did not honor. Brana then tried to call the Defendants to no avail. He again went to the construction site. On October 29, 1985

he had a conference with Courtney and Stines to explain and give them a copy of record keeping requirements. Brana explained the overtime provisions, the law as to piece work and who was and was not an independent contractor. Stines advised that Del American Properties had all employee records and that he did not know if he had any cancelled checks. Both Stines and Courtney agreed to comply with the law and stated that some wages were due and would be paid. They were not.

Brana established November 5, 1985 as the date for Stines and Courtney to pay the wages that were due and owing and gave notice to both men of another meeting. Neither Defendant showed up for the scheduled appointment. Brana scheduled another conference on November 8, 1985. Neither Defendant appeared. Another conference was scheduled for November 12, 1985, and neither Defendant appeared. Brana stated he then lost count of how many conferences were scheduled with Defendants subsequently failing to appear.

Brana then began contacting present and former employees at the various projects of Defendants. He also obtained documents verifying amounts builders had paid Defendants for the 1984 and 1985 time frame, which amounted to in excess of $1,036,000. He reviewed the available documentation and made observations at certain of the Defendants' job sites. He also took statements from former employees of Defendants.[13] Further, Mr. Brana sat through the trial of this case. From these sources, he made computations [14] which were admitted into evidence as Plaintiff's Exhibits 12 and 13.[15] Although Brana requested records

---

**13.** Brana testified that in his interview with Robert Campbell, Campbell said he did not feel he was owed anything by Defendants, but that from Brana's computations Campbell was paid $425 a week and worked a forty-five hour week without payment for overtime hours. Campbell, during his testimony at trial, testified that he felt he was paid for all work done. Campbell also testified that he and his crew began work at 7:30 a.m. and ended at 4:00 to 4:30 p.m. with an hour for lunch and that they worked Saturdays "once in a while". He testified that he got the checks to pay his crew from Defendants Courtney and Stines based on information communicated to Defendants from Campbell

and that Courtney and Stines gave Campbell checks for Campbell to give to employees on the crew. The checks he was given by Defendants were drawn on a Stineco account.

**14.** Brana testified that if he had employer records, the computations of amounts due for each employee were from the records. If he did not have a record, he made a conservative estimate.

**15.** Plaintiff's Exhibit 12 is the collection of "Wage Transcription and Computation Sheet[s]" by which Mr. Brana calculated the amount due each employee. Mr. Brana then prepared Plain-

from Defendants, none were forthcoming. Mr. Brana testified that he gave credit for payments made by Del American Properties on behalf of Defendants.

The foregoing testimony establishes that the Defendants engaged in a pattern of underpayment or non-payment of all of the employees, named and unnamed, listed on Plaintiff's Exhibits 12 and 13. The evidence establishes that the Defendants consistently failed to pay overtime wages and failed to pay minimum wages. While not all of the named employees testified, the testimony of the other employees and the evidence before the Court as to Defendants' practices, combined with Mr. Brana's investigation, enable the Court to reach a reasonable conclusion on amounts owed these employees. Similarly, the Court can reach a reasonable conclusion about the amount owed a group of unidentified employees at the Avalon site based on the testimony of some of Defendants' other employees and on Mr. Brana's investigation.

Mr. Brana concluded that 88 of Defendants' employees are due a total of $41,002.44 in back wages. Of that amount, $19,750.03 constitutes minimum wages due 71 employees, while $21,252.41 constitutes overtime compensation due 34 employees. These computations are supported by the evidence before the Court. Accordingly, Mr. Brana's conclusions are hereby adopted. The Court finds that unpaid minimum wages and overtime compensation in the amount of $41,002.44 are due Defendants' employees *for the periods of employment and in the specific amounts set forth in Plaintiff's Exhibit 13, attached hereto as Exhibit A, and incorporated in this Order.*

Further, a review of the evidence reveals that $18,221.88 is due for work performed prior to April 29, 1985, while $22,780.56 is due for work performed after that date.

The Defendants made the computation of back wages due more difficult by failing to maintain time and payroll records. Although Mr. Brana requested these records, they were never provided to him or to the Court. Indeed, the amounts computed by Mr. Brana may vastly understate the total amount that the Defendants failed to pay their employees.

At all relevant times the Defendants were aware of the provisions of the FLSA. Stines and Courtney stated that *they were familiar with the provisions of the Act* when they met with Mr. Brana on October 19, 1985. However, even after this meeting the Defendants continued to violate the Act. This action bears upon the Defendants' prior intent in not complying with the Act. Accordingly, the Court concludes that at all relevant times the Defendants were aware that the Act was applicable to their employment practices but that they intentionally failed to operate their business in a manner consistent with the Act.[16] Furthermore, even if Defendants did not know before the meeting that their conduct violated specific provisions of the Act, at a minimum their admissions establish that they showed reckless disregard for whether their business practices violated the Act.

## CONCLUSIONS OF LAW

I. THE FLSA APPLIES TO THE ACTIONS OF THE DEFENDANTS IN THIS CASE.

 A. The Defendants Constituted an Enterprise Engaged in Commerce or in the Production of Goods for Commerce under the FLSA.

■ As preliminary matter, the Court concludes that Stines as a framing contractor constituted an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of section 3 of the FLSA, 29 U.S.C. § 203(r) and (s),

---

tiff's Exhibit 13, which summarizes and totals the amounts owed by the Defendants to their employees.

Mr. Brana initially prepared these exhibits before trial. He then amended the exhibits to reflect additional information developed during the trial.

16. Also relevant to this determination is the Defendants' attempt to label their employees as independent contractors when they clearly were not. This action can only be characterized as an obvious effort to facially avoid the requirements of the Act.

from January 1, 1984 until April 28, 1985, and so is covered by the FLSA. On April 29, 1985 Courtney and Stineco joined this enterprise and were so engaged until July 5, 1986. The common business purpose of this enterprise was framing construction in the construction of single and multi-family homes. *See* 29 U.S.C. §§ 203(r) and 203(s)(4). The total sales of the enterprise during the 1984 and 1985 time frame exceeded one million dollars. *See* 29 U.S.C. § 203(s)(1). Finally, the business handled goods or materials produced at or shipped from points outside of the State of Florida. *See* 29 U.S.C. §§ 203(b) and 203(s). Accordingly, the FLSA applies to the actions of Defendants.

B. The Defendants were Employers under the FLSA.

■ The minimum wage, overtime, record-keeping and child labor requirements of the FLSA are imposed upon employers. 29 U.S.C. §§ 206, 207, 211(c) and 212(c). Section 3 of the FLSA, 29 U.S.C. § 203(d), defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee...." In determining whether an individual is an employer, a court must focus upon the totality of the circumstances, examining with particular care the economic realities of the employment relationship. *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194 (5th Cir.), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983). Of particular importance is whether an individual independently exercised control over the work situation. *Id.*

■ The evidence is clear that both Stines and Courtney exercised pervasive control over the business, financial and employment affairs of Stineco from April 29, 1985 through July 5, 1986. Accordingly, both were employers along with Stineco during that period. " 'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid

wages.' " *Patel v. Wargo,* 803 F.2d 632, 637–638 (11th Cir.1986), *citing Donovon v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983). Stines and Courtney were involved in the day-to-day operation of Stineco and had direct responsibility for supervision of employees. *Id.* Also, Stines himself was an employer through his capacity as a proprietor in the framing construction business from January 1, 1984 through April 28, 1985.

C. The Individuals for whom Plaintiff Secretary of Labor Seeks Recovery of Back Wages were Employees under the FLSA and were not Independent Contractors.

■ The protections of the FLSA extend to employees. Title 29, United States Code section 203(e)(1) defines an "employee" as "any individual employed by an employer." [17] In determining whether an individual is an employee, a court must look at the economic realities of the relationship. *Tony and Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). Whether the individuals alleged to be employees of the Defendants were "employees" under the FLSA or were independent contractors turns upon the degree of their economic dependence on the Defendants. *Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.,* 704 F.2d 822, 825 (5th Cir.1983). Five considerations are applied to determine the extent of economic dependence: (1) the degree of control the alleged employer exercises over the workers; (2) the workers' opportunity for profit or loss; (3) the workers' investment in facilities and equipment; (4) the permanence of the "employment" relationship; and (5) the skill required to perform the work. *Id.; Usery v. Pilgrim Equipment Co.,* 527 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). For example, in *Trustees of Sabine* the court found that the carpenters employed by the defendant were independent contractors because they were hired on a piece-work

---

**17.** This statutory definition may be the ultimate illustration of the reflexive principle.

basis, they were paid by a set price per linear-foot, they supplied their own equipment, they were not supervised by the alleged employer, etc. 704 F.2d at 826.

■ Application of these considerations to the facts of this case indicates that the individuals alleged by Plaintiff to be employees were economically dependent on the Defendants and accordingly were employees under the FLSA. The employees were supervised by the Defendants or their agents, had no opportunity for profit or loss, and did not generally invest in equipment. The permanency of the employment relationship and the skill level of the employees varied, but this does not overcome the employment relationship clearly suggested by the other factors. There are no indicia of the economic independence of the employees. The individuals alleged to be employees of the Defendants were dependent upon the framing contracting business as operated by the Defendants. *See Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir.1983). These employees were simply not in business for themselves.

## II. BECAUSE THE VIOLATIONS IN THIS CASE WERE WILLFUL, THE STATUTE OF LIMITATIONS APPLICABLE IN THIS CASE IS THREE YEARS; THEREFORE, NO CLAIMS ASSERTED BY THE PLAINTIFF ARE TIME BARRED.

■ The statute of limitations for actions under the FLSA is contained in 29 U.S.C. § 255(a). The limitations period is normally two years but is extended to three if the violation of the FLSA is willful. A recent Supreme Court decision has restricted the standard applied in determining willfulness. Under this decision, a defendant commits a willful violation only when it knew that its conduct was prohibited by the FLSA or when it showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, — U.S. ——, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Because the Court has found that the Defendants actually knew their business practices were prohibited by the FLSA or at a minimum showed reckless disregard for the question of whether their business practices were prohibited by the FLSA, the three year statute of limitations is applicable to this action.

This action was filed on June 27, 1986. The earliest claim asserted by the Plaintiff is for work which began in January of 1984. Accordingly, recovery of no part of the back wages claimed due is time barred.

## III. THE DEFENDANTS FAILED TO KEEP THE RECORDS REQUIRED BY THE FLSA.

■ The Defendants failed to keep records of the persons employed by them and of the wages, hours, and other conditions and practices of employment maintained by them as required by section 11(c) of the FLSA, 29 U.S.C. § 211(c), and 29 C.F.R. § 516. The regulations provide that every employer shall maintain and preserve payroll or other records containing the employee's name, address, date of birth (if under 19), sex, occupation, hourly rate of pay if overtime is worked, hours worked daily, straight-time hours worked daily, etc., for all employees to whom section 6 or both sections 6 and 7(a) of the FLSA are applicable. 29 C.F.R. § 516.2. Defendants did not produce these records for Mr. Brana, nor have they produced adequate records for the Court. Defendants therefore violated sections 11(c) and 15(a)(5) of the FLSA, 29 U.S.C. §§ 211(c) & 215(a)(5), and 29 C.F.R. § 516.

## IV. DEFENDANTS HAVE VIOLATED THE FLSA AND THEREFORE OWE BACK WAGES AND INTEREST TO THEIR EMPLOYEES FOR WHICH THE COURT SHALL ISSUE A RESTITUTIONARY INJUNCTION.

A. Because of the Defendants' Failure to Keep Adequate Records, the Plaintiff Faces a Lesser Burden of Proving a Violation of and Damages under the FLSA.

■ Because of the Defendants' failure to keep adequate records, the Plaintiff was unable to exactly prove the amount owed to Defendants' employees. However,

**450**

where an employer has violated its legal duty to keep adequate records, thereby preventing the employees' access to evidence to which they are legally entitled, the Court applies a special set of burdens. First, the employee must produce sufficient evidence to prove that he "performed work for which he was improperly compensated" and "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). Once the employee makes out a *prima facie* case by producing such evidence, then the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–688, 66 S.Ct. at 1192. Unless the employer meets this burden, a court may award approximate damages based on the employee's evidence. *Id; see also Amcor, Inc. v. Brock,* 780 F.2d 897, 900–901 (11th Cir.1986) (applying this rule to a case under the Service Contract Act).

▇▇▇ In cases where the employer has not kept records as required by law, the evidence presented by both the employer and employees may be incomplete and approximate. Under these circumstances, a court is entitled to rely upon the testimony and calculations of the compliance officer who investigated the case for the Department of Labor to the extent that it finds such evidence useful and probative. Compliance officers have an extensive familiarity with the facts of a case which can be extremely helpful to a court in determining whether a violation of the FLSA has occurred and the amount of any recovery. Accordingly, " '[I]t is for the trial judge to determine from all [she] has and sees the weight to be accorded the compliance officer's computations....' " *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823,

828 (11th Cir.1988), *cert. denied,* —— U.S. ——, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988), *citing, Hodgson v. American Concrete Constr. Co.*, 471 F.2d 1183, 1186 (6th Cir.), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973).

B. Plaintiff Made Out a *Prima Facie* Case by Proving that Employees Performed Work for which they were Improperly Compensated and by Coming Forward with Sufficient Evidence to Show the Amount of Work as a Matter of Just and Reasonable Inference.

▇▇▇ In the present case the Plaintiff has made out a *prima facie* case. Many of the Defendants' employees testified about the amounts they believed Defendants owed them. Some of the named employees did not testify; however, the evidence before the Court allows a just and reasonable inference on the amounts Defendants owed these individuals. Not every employee need testify in order to make out a *prima facie* case. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir.1985). Here a large number of Defendants' employees actually testified, establishing a *practice* of underpayment and nonpayment. This testimony supports that of the compliance officer, which references all employees for which recovery is sought. The Court has reviewed the reports prepared by the Mr. Brana, the compliance officer, and finds them accurate and conservative.[18] Accordingly, the Court can and does adopt the calculations of Mr. Brana for the amount owed each individual employee. *See Norman's Country Market,* 835 F.2d at 828. Any inaccuracy in these calculations is due to the failure of the Defendants to keep adequate records. *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir.1979).

▇▇▇ Plaintiff also made out a *prima facie* case for the unidentified employees

---

**18.** While all of the bases of Mr. Brana's calculations were not introduced into evidence, considerable evidence which did support the calculations was introduced by Plaintiff. The Court has reviewed Mr. Brana's calculations and finds them consistent with the other evidence that was introduced, and conservative otherwise. Furthermore, the Court found Mr. Brana to be a credible witness.

not paid at the Avalon job site. Damage awards for unidentified employees are permissible under the FLSA so long as a preponderance of the evidence establishes the existence, work hours, and wages of these employees. *See American Waste Removal Co. v. Donovan*, 748 F.2d 1406, 1410 (10th Cir.1984) (applying this FLSA standard to case under the Service Contract Act); *Marshall v. Hope Garcia Lancarte, Inc.*, 632 F.2d 1196, 1197–1199 (5th Cir. 1980) (whether the Secretary of Labor has met burden under *Mt. Clemens* of proving wages owed to unidentified employees is question of fact for the trial court); *Marshall v. Presidio Valley Farms, Inc.*, 512 F.Supp. 1195, 1198 (W.D.Tex.1981) (awarding back pay to unidentified employees). In determining whether a plaintiff has met this burden, a court applies the *Mt. Clemens* burdens of proof if the defendants have not kept adequate records. In this case the Plaintiff has made a *prima facie* case by proving that unidentified employees at the Avalon job site were not paid and by providing sufficient evidence for the Court to determine the amounts owed as a matter of just and reasonable inference. Both Beaudoin and Lebo testified to the existence of these other employees and the amount of work performed by them, as did Mr. Brana, the compliance officer.[19] Mr. Brana's report provides a reasonable and conservative estimate, supported by the evidence, of the amounts owed the unidentified employees.

C. Defendants did Not Produce Sufficient Evidence of the Precise Amount of Work Performed or Evidence which Negated the Reasonable Inferences Drawn from Plaintiff's Evidence and Therefore Failed to Rebut Plaintiff's *Prima Facie* Case.

■ The Defendants failed to come forward with evidence of the precise amount of work performed by the employees or with evidence to negate the reasonable inferences to be drawn from the Plaintiff's evidence; therefore, Defendants failed to rebut the *prima facie* case established by the Plaintiff. *Mt. Clemens*, 328 U.S. at 687, 66 S.Ct. at 1192. The Defendants failed to present any convincing evidence of inaccuracy in the testimony of the Plaintiff's witnesses, including that of Mr. Brana. To the extent that the testimony of Gary Stines, Robert Campbell, and Steven Pickerel tended to rebut the Plaintiff's *prima facie* case, that testimony was considerably outweighed by the testimony presented by the Plaintiff's witnesses.

■ Defendants made their best case for rebuttal as to Robert Campbell and Steve Pickerel, the employees who testified for the Defendants. These employees testified that they were independent contractors and that they did not feel they were not owed back wages by the Defendants. However, the Court concludes based on their testimony and the testimony of the other witnesses that Campbell and Pickerel are owed back wages for unpaid overtime, and the Court rejects the testimony of Campbell and Pickerel to the contrary. Also, their contention that they were independent contractors does not vitiate their right to recovery. Finally, these employees cannot object to suit by the Secretary of Labor for amounts due them, *Donovan v. University of Texas at El Paso*, 643 F.2d 1201, 1208 (5th Cir.1981) (there is no requirement under section 17 that employees request, consent, compromise or otherwise affect the pending litigation by the Secretary), and cannot waive the protections of the FLSA. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981).

**19.** This case is thus distinguishable from *Hope Garcia Lancarte*, where the district court rejected the compliance officer's conclusions about the amounts owed the unidentified employees. In that case, the compliance officer's report was unsupported. Furthermore, the compliance officer was himself unsure of how he arrived at his estimate of the number of workers. 632 F.2d at 1199.

In this case, not only are Mr. Brana's conclusions about the amount owed the unidentified employees supported by the testimony of employees of the Defendant, but also Mr. Brana has himself articulated the bases for his conclusions.

D. **Plaintiff is Entitled to a Restitutionary Injunction to Recover Back Wages Owed to Defendants' Employees, even if the Employees Refuse to Accept the Back Wages.**

 Because the Defendants failed to rebut Plaintiff's *prima facie* case, the Court finds that the Defendants have consistently violated sections 6, 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206, 207 and 215(a)(2), by failing to pay required minimum wages and overtime compensation to their employees, and that a restitutionary injunction must issue under section 17 of the FLSA, 29 U.S.C. § 217. *Donovan v. Grantham,* 690 F.2d 453, 456–457 (5th Cir. 1982). A total of $41,002.44 is owed to employees. Defendant Stines was an employer during the entire period when this sum accrued, therefore he is enjoined from withholding the entire amount owed. Defendants Courtney and Stineco are enjoined from withholding the $22,780.56 portion of the amount owed which accrued after they became employers under the FLSA on March 29, 1985.

Furthermore, even if Campbell and Pickerel or any other claimants refuse or are unable to accept the back wages due them from the Defendants, the amounts owed may be retained by the United States and paid into its treasury on behalf of future claimants. *University of Texas,* 643 F.2d at 1208 n. 16; *McLaughlin v. McGee Bros. Co.,* 681 F.Supp. 1117, 1136 (W.D.N.C. 1988). Allowing the Secretary of Labor to retain amounts refused or not claimed by employees serves two important purposes: Defendants are prevented from retaining the benefits of their violation of the FLSA, and employers which comply with the FLSA are protected from unfair competition by employers which do not comply. *Hodgson v. YB Quezada,* 498 F.2d 5, 6 (9th Cir.1974); *Burk Builders, Inc. v. Wirtz,* 355 F.2d 451, 453 (5th Cir.1966); *Wirtz v. Jones,* 340 F.2d 901, 904–905 (5th Cir.1965);

*McGee Bros.,* 681 F.Supp. at 1136 (and cases cited therein).

E. **The Restitutionary Injunction Shall Include an Award of Pre–Judgment and Post–Judgment Interest in the Amount of 7.59 Percent Per Annum.**

 Plaintiff is entitled to an award of pre-judgment interest in an action brought under section 17, 29 U.S.C. § 217. *Hope Garcia Lancarte,* 632 F.2d at 1199; *Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 58 (2nd Cir.1984) (ordinarily the failure to award prejudgment interest under the FLSA is an abuse of discretion). Plaintiff is similarly entitled to post-judgment interest, either under 28 U.S.C. § 1961 or under the Court's equitable powers. *Brock v. Richardson,* 812 F.2d 121, 125–126 (3rd Cir.1987) (even if 28 U.S.C. § 1961 is not controlling in an equitable action, post judgment interest should be awarded in an action under the FLSA unless the equities require otherwise); *Sovereign Security,* 726 F.2d at 58 (same). The equities in this case favor the Plaintiff and the employees.

However, because the awarding of interest in this case is based on equitable principles and not a statute (except perhaps 28 U.S.C. § 1961 for post-judgment interest), no statute controls the rate of interest or time at which interest begins to run. *See Richardson,* 812 F.2d at 127 (no statute controls rate of interest applicable to FLSA restitutionary injunctions). A review of the case law reflects that courts have applied a variety of interest rates, often six or twelve percent,[20] and a variety starting dates for interest, such as the date of accrual of the back wages or the median date of the applicable period of violations by the employer. The Court on the facts of this case finds that interest should run on the amount owed each employee from the median date of that employee's employment.[21] This method allows particularization of the amount owed each employee while minimizing the evidentiary and computational diffi-

---

**20.** Plaintiff requests that interest be awarded at twelve percent per annum.

**21.** Defendant Stines shall be solely responsible for interest as to those employees whose median dates of employment fall on or before April 28,

1985. All three Defendants shall be responsible for interest as to those employees whose median dates of employment fall on or after April 29, 1985.

culties in computing dates of accrual of back wages for each employee. Further, the Court sees no reason to depart from the rate of interest awarded under 28 U.S.C. § 1961 for either pre-judgment or post-judgment interest. That rate is currently 7.59 percent per annum.

Accordingly, the Court directs that the Defendants be enjoined from withholding interest on the back wages due the employees. Interest at the rate of 7.59 percent per annum shall run on the amount owed each employee from the median date of employment of that employee until the date of payment of the sum due.

## V. DEFENDANTS HAVE VIOLATED THE FLSA'S PROHIBITION AGAINST THE EMPLOYMENT OF OPPRESSIVE CHILD LABOR.

Section 12(c) of the FLSA provides that "No employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 212(c). "Oppressive child labor" is defined by section 3 of the FLSA as a condition of employment under which (1) an employee under age sixteen is employed in any occupation, unless exempted by the Secretary, or (2) an employee between sixteen and eighteen is employed in any occupation which the Secretary of Labor by order declares to be particularly hazardous for the employment of children between such ages or detrimental to their health or well-being. 29 U.S.C. § 203(1); *see also McGee Bros.*, 681 F.Supp. at 1135. The Secretary through his regulations has defined all occupations in roofing operations as hazardous for the employment of minors between 16 and 18 or hazardous to their health. 29 C.F.R. § 570.67(a). "Roofing operations" are defined as all work performed in the application of weatherproofing materials, in the construction of roofs (including related metal work such as flashing), and in alterations, additions, maintenance and repair of existing roofs. 29 C.F. R. § 570.67(b).

Further, because the Secretary has determined that roofing operations are hazardous for the employment of individuals between sixteen and eighteen, employment of individuals between fourteen and sixteen in that occupation is also prohibited. *See* 29 C.F.R. §§ 570.32 and 570.33(e) (not exempting such occupations from the coverage of 29 U.S.C. § 203(*l*)). Even if work by those below age sixteen were allowed generally in roofing operations, the Secretary pursuant to his authority under· section 3 has also determined that employment of children between the ages of fourteen and sixteen shall be considered oppressive child labor if the child is employed for more than 40 hours per week. *See* 29 C.F.R. § 570.35.

The Defendants violated these provisions. The Defendants violated sections 12(c) and 15(a)(4) of the FLSA, 29 U.S.C. §§ 212(c) and 215(a)(4), and 29 C.F.R. § 570.67 by employing two individuals under the age of eighteen, Greg Allen Bear and Justin Pasag, in roofing operations as defined above. The Defendants violated these same sections of the FLSA and 29 C.F.R. §§ 570.32, 570.33(e) and 570.35 by employing an individual fifteen years old, Justin Pasag, in roofing operations for more than 40 hours per week.

## VI. THE COURT IN THE EXERCISE OF ITS EQUITABLE DISCRETION WILL ENJOIN DEFENDANTS STINES AND COURTNEY FROM FURTHER VIOLATIONS OF THE PROVISIONS OF THE FLSA.

Finally, the Court must determine whether a prospective injunction should issue prohibiting further violations of the FLSA. The most important factors in making this decision are the previous conduct of the employer and dependability of its promises of future compliance. *Donovan v. Brown Equipment & Service Tools, Inc.*, 666 F.2d 148, 158 (1982); *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir.1975); *see also Goldberg v. Cockrell*, 303 F.2d 811, 813 (5th Cir.1962) (in determining whether injunction should issue a court should examine the previous conduct of the employer, the moral and business responsi-

bility of the employer, the dependability of promises of compliance, and nature of the employers opposition in the case before the court). In this case the Defendants' past actions were willful and continued even after they were warned by the Department of Labor. The Defendants have offered no acceptable assurances that they will in the future conform their conduct to the requirements of the law. Therefore, the Defendants Stines and Courtney shall be enjoined from future violations of the minimum wage, overtime, record-keeping and child labor provisions of the FLSA. No injunction shall issue against Stineco since that corporation no longer exists.

The Court directs that the Plaintiff shall submit within ten days of the date of this Order an appropriate judgment in light of this Order. Defendants shall have five days thereafter to file objection to such judgment.

## EXHIBIT A

| Summary of Unpaid Wages | **U.S. Department of Labor** |
|---|---|
| | Employment Standards Administration |
| | Wage and Hour Division |

| COMPLIANCE OFFICER: | DATE: | Page 1 |
|---|---|---|
| Armando R. Brana | 02-21-86 | PAYMENT TO BE COMPLETED AND ORIGINAL COPY OF RECEIPT (S) MAILED TO OFFICE DESIGNATED |
| EMPLOYER FED. TAX ID NUMBER: 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 | | BY _____ N/A |

| 1. NAME | 2. ADDRESS | 3. PERIOD COVERED by Workweek Ending Dates | | 4. ACTS (See code below)* | 5. GROSS AMOUNTS DUE |
|---|---|---|---|---|---|
| Greg Bear 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 | 2956 Notre Dame Dr. Orlando, FL 32826 | 7-20-85 | 9-21-85 | 1 | 519.05 |
| Keith H. Beaudon | 1235 La Gorce Dr. Apopka, FL 32703 | 1-5-85 | 7-17-85 | 1 | ~~3,352.35~~ 7/30.— |
| Robert Campbell | 5600 Turin St. Orlando, FL 32807 | 1-7-84 | 1-4-86 | 1 | 2,454.40 |
| Juan Cristin | 608 Beverly Altamonte Springs, FL 32701 | 8-10-85 | 10-19-85 | 1 | ~~50.00~~ 557.26 |
| William Diestro | 2525 Alafaya Trail, #46 Orlando, FL 32826 | 7-6-85 | 7-20-85 | 1 | 102.30 |
| Roger Followay | 30 Red Oak Eustis, FL 32726 | 8-17-85 | 9-14-85 | 1 | 187.85 |
| Terry Gilliard | 1564 Silver Fox Cr. Apopka, FL 32712 | 3-16-85 | 6-15-85 | 1 | 280.00 |
| Steven Gilliard | 1316 Classic Dr. Longwood, FL 32779 | 6-15-85 | 8-17-85 | 1 | 393.00 |
| David A. Henshilwood | 595 Calbrai Crest Pky., #203 Altamonte Springs, FL 32714 | 8-31-85 | 10-5-85 | 1 | 459.08 |
| Robert N. Herring | 551 E. Semoran Blvd., #C-2 Fern Park, FL 32730 | 8-3-85 | 11-16-85 | 1 | 479.25 |
| Brian S. Houser | 130 Nashua Ave. Altamonte Springs, FL 32714 | 8-3-85 | 9-14-85 | 1 | 171.50 |
| Kevin Kennedy 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 | 4025 Anthony Lane Orlando, FL 32822 | 8-3-85 | 9-7-85 | 1 | ~~435.50~~ 457.00 |
| James H. Kestler, Jr. | 6-D Jasmine Woods Deltona, FL 32725 | 8-31-85 | 9-14-85 | 1 | 856.00 |
| Jeffrey Kixmiller | 321 S. Northlake Blvd., #1143 Altamonte Springs, FL 32701 | 8-17-85 | 10-19-85 | 1 | 48.13 |
| James R. Kohler | 895 S. Wymore Rd., #1005 Altamonte Springs, FL 32714 | 6-22-85 | 7-13-85 | 1 | 981.60 |
| Allen C. Lane, Jr. | 14112 Rutgers Ave. Orlando, FL 32826 | 7-20-85 | 9-21-85 | 1 | 76.40 |
| Billy A. Lane | 2960 Notre Dame Dr. Orlando, FL 32827 | 7-20-85 | 9-21-85 | 1 | 76.40 |
| Jeff Lebo | 531 Lelac Rd. Casselberry, FL 32707 | 1-7-84 | 11-30-85 | 1 | 4,980.90 |
| Dennis K. Martin | 2525 Alafaya Trail, #46 Orlando, FL 32826 | 7-6-85 | 7-20-85 | 1 | 102.30 |
| Rick Martin | 12144 Mendel Dr. Orlando, FL 32822 | 7-13-85 | 9-7-85 | 1 | 291.76 |

**TOTAL** | NEXT PAGE

Name and address of establishment

Steve E. Stines and James A. Courtney, Jr.
STINECO, INC.
P.O. Box 27784
Orlando, FL 32867

Page (1) of (2)

*Column 4-Code
| FLSA | 1 |
| PCA | 2 |
| SCA | 3 |
| DBRA | 4 |
| CWHSSA | 5 |
| CCPA | 6 |

See Reverse Side for Instructions

Form WH-56
Rev, August 1984

**456**

Summary of Unpaid Wages

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

| COMPLIANCE OFFICER: | DATE: | |
|---|---|---|
| Armando R. Brana | 02-21-86 | Page 2<br>PAYMENT TO BE COMPLETED AND ORIGINAL COPY<br>OF RECEIPT (S) MAILED TO OFFICE DESIGNATED |
| EMPLOYER FED. TAX ID NUMBER:<br>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 | | BY _____ N/A |

| 1. NAME | 2. ADDRESS | 3. PERIOD COVERED by Workweek | Ending Dates | 4. ACTS (See code below)* | 5. GROSS AMOUNTS DUE |
|---|---|---|---|---|---|
| James Matlock<br>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 | 57 Lake Drive<br>Eustis, FL 32726 | 5-21-85 | 12-18-85 | 1 | 402.00 |
| Mark W. McLean | 537 Woodview Dr.<br>Longwood, FL 32779 | 9-28-85 | 11-23-85 | 1 | 1,741.70 |
| Dallas M. Miles | 486 Kindling Ct.<br>Ocoee, FL 32761 | 8- -85 | 9- -85 | 1 | 160.00 |
| Orlando Montes | 616 Hattaway Dr.<br>Altamonte Springs, FL 32701 | 8-10-85 | 10-19-85 | 1 | 50.05 |
| Manny Montes | 616 Hattaway Dr.<br>Altamonte Springs, FL 32701 | 8-10-85 | 10-19-85 | 1 | 557.96 |
| James Moreney | 3505 Khayyam Ave.<br>Orlando, FL 32826 | 12-14-85 | 12-14-85 | 1 | 11.36 |
| Phil Moreney | 3505 Khayyam Ave.<br>Orlando, FL 32826 | 12-14-85 | 12-14-85 | 1 | 11.36 |
| U. Stanley Newton | Rt 1, Box 169<br>Sanford, FL 32771 | 9- -85 | 10-21-85 | 1 | 26.00 |
| Steve Pickerel | 844 E. Church St.<br>Longwood, FL 32750 | 6-15-85 | 10-19-85 | 1 | 422.75 |
| Dwight Roetmeyer | Unknown | 9-19-85 | 9-19-85 | 1 | 150.50 |
| Gerald F. Sanders | 1521 Willow Oak Dr.<br>Edgewater, FL | 9-7-85 | 9-7-85 | 1 | 60.30 |
| Denise Smith | 531 Lelac Rd.<br>Casselberry, FL 32707 | 1-7-84 | 12-15-84 | 1 | 1,052.50 |
| Rick Smith | 478 Misty Lane<br>Winter Park, FL 32789 | 6-15-85 | 11-30-85 | 1 | 1,370.00 |
| James C. Staats | 141 Poinciana St.<br>Eustis, FL 32726 | 8-17-85 | 9-14-85 | 1 | 187.85 |
| Robert C. Staats | 141 Poinciana St.<br>Eustis, FL 32726 | 8-17-85 | 9-14-85 | 1 | 187.85 |
| Jack Stollard | 1938 Kasper Ct.<br>Orlando, FL 32806 | 1-4-85 | 2-21-85 | 1 | 758.88 |
| Christopher L. Musch | 264 So. Wymore Rd #162<br>Altamonte Springs FL 32714 | 5-3-86 | 7-5-86 | 1 | 2,250.00 |
| ADDITIONAL 50 EMPLOYEES,<br>WEEKS WORKED AT THE AVALON<br>AT LEAST 30 HOURS EACH WEEK. | NAMES NOT KNOWN AT THIS TIME,<br>JOB SITE DURING MARCH 1985. | NOT PAID<br>THESE EMPLOYEES | AT ALL FOR TWO<br>WORKED | | 10,050.00 |
| Justin Casas | | | | | 922.50 |
| | | | | | $ 25,616.47 |

| | |
|---|---|
| | TOTAL $32,995.97 |
| | 41,002.42 |

Name and address of establishment

Steve E. Stines and James A. Courtney, Jr.
STINECO, INC.
P.O. Box 27784
Orlando, FL 32867

Page (2) of (2)

*Column 4-Code
FLSA 1
PCA 2
SCA 3
DBRA 4
CWHSSA 5
CCPA 6

See Reverse Side for Instructions

Form WH-56
Rev. August 1984